[No. C031977. Third Dist. May 17, 2000.]

SYLVESTER MACK et al., Plaintiffs and Appellants, v.
LIAN SOUNG, Defendant and Respondent.

**[Opinion certified for partial publication.\*]**

---

*\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.

## COUNSEL

Chadeayne, Burns & Leachman and Ronald Van Leachman for Plaintiffs and Appellants.

Steinheimer, Riggio, Haydel & Mordaunt, Riggio, Mordaunt & Kelly, Douglas A. Haydel and Donald M. Riggio for Defendant and Respondent.

## OPINION

**CALLAHAN, J.**—This case presents the question of whether plaintiffs, the surviving children of Girtha Mack, can state a cause of action against her former physician for either violation of the Elder Abuse and Dependent Adult Civil Protection Act (the Elder Abuse Act or the Act, Welf. & Inst. Code,[1] § 15600 et seq.), or for intentional infliction of emotional distress. The trial court sustained demurrers to both causes of action without leave to amend.

We will conclude that plaintiffs have sufficiently stated a cause of action against Dr. Lian Soung for elder abuse. In the unpublished portion of this opinion, we agree with the trial court that plaintiffs cannot state a cause of action against the doctor for intentional infliction of emotional distress. We affirm in part and reverse in part with directions.

### BACKGROUND

Since this is an appeal from a judgment entered in defendant's favor following orders sustaining demurrers without leave to amend, we summarize and accept as true all material allegations of the complaint. (*Hensler v. City of Glendale* (1994) 8 Cal.4th 1, 8, fn. 3 [32 Cal.Rptr.2d 244, 876 P.2d 1043]; *Shoemaker v. Myers* (1990) 52 Cal.3d 1, 7 [276 Cal.Rptr. 303, 801 P.2d 1054, 20 A.L.R.5th 1016].) Because this appeal involves orders sustaining demurrers to two different causes of action appearing in different amended versions of the complaint, we set forth the material allegations for each separately.

[1] All further unspecified statutory references are to the Welfare and Institutions Code.

*Elder Abuse (Third Amended Complaint)*

Plaintiffs are the children of decedent Girtha Mack, who passed away on October 13, 1996. Defendant Soung is a licensed medical practitioner who attended to Girtha during her final days, during which she resided at Covenant Care Nursing and Rehabilitation Center (Covenant).[2] Both Dr. Soung and Covenant were health care providers within the meaning of the Elder Abuse Act.

Despite assurances by Covenant to plaintiffs that steps were being taken to prevent their mother from getting bedsores, in August 1996 (all further calendar references are to that year) Girtha was left in a bedpan for 13 consecutive hours, with the result that she developed an untreatable stage III bedsore. Covenant and Dr. Soung concealed the existence of the bedsore until September 4, and Covenant's employees refused to permit plaintiffs to inspect the injury until an ombudsman intervened on their behalf on September 10.

Knowing that Girtha's mental faculties were deteriorating, Dr. Soung entered into a consultative relationship with plaintiffs regarding her care and treatment. Dr. Soung not only concealed Girtha's injury but he also consistently opposed Girtha's hospitalization in September and October, representing that Covenant's care was "appropriate." When her condition worsened in October, Dr. Soung abruptly abandoned Girtha as her physician without further notice and refused to respond to repeated requests by Covenant's staff to permit Girtha's hospitalization, thereby endangering her health. His actions were "reckless." Girtha died on October 13, a few days after Dr. Soung gave written notice of his withdrawal as her physician.

*Intentional Infliction (Fifth Amended Complaint)*

The fifth amended complaint expanded on the allegations set forth above. It noted that Dr. Soung had a high-volume geriatric practice with many patients from long-term care facilities. On September 8, despite having received a message that Girtha has sustained a stage III bedpan injury, Dr. Soung conducted a monthly exam and wrote that she had "not much change in condition" without mentioning the bedsore. Dr. Soung was aware Girtha had a preference for medical intervention unless she was permanently comatose. On September 18, over the objection of Dr. Soung but consistent with Girtha's wishes, Girtha was admitted to the hospital for treatment of her injury; she was readmitted to Covenant on September 23, by which time Dr. Soung noted she was unable to understand her condition.

---

[2]Although Covenant was originally a codefendant, it is no longer a party to this action.

As Girtha's communicativeness waned, Dr. Soung spoke increasingly to plaintiffs about her care, thereby entering into a consultative relationship with them. On September 3 and 10, the doctor was called to testify at an administrative hearing to revoke the license of a nursing care home, based on the same issues that had arisen between Covenant and Girtha. He also learned the Department of Health Services was investigating the treatment that led to Girtha's bedpan injury. Consequently, Dr. Soung became openly hostile to plaintiffs, whom he viewed as "troublemakers."

On October 8, Dr. Soung mailed a notice of withdrawal of care to Girtha's former address. Though he knew plaintiffs were capable of making surrogate decisions for her care, he failed to contact them. On October 9, he advised plaintiff Sylvester Mack that he would withdraw in 30 days unless plaintiffs found another physician earlier. At that time he had examined Girtha and found that she had a large swelling on the side of her face. On October 11, plaintiffs were advised by nurses at Covenant that Girtha was dying, but that Dr. Soung refused to permit her hospitalization. Since Dr. Soung's authority was essential to transfer Girtha to the hospital, plaintiffs were forced to remove Girtha's wristband and tell the emergency room staff that she had no primary physician, in order to secure Girtha's admission to the hospital. Dr. Soung's "wilful and abrupt abandonment" of Girtha with "no warning" was "despicable and malicious, and with conscious disregard for the rights and feelings of [Girtha] and her family." As a result of Dr. Soung's actions, plaintiffs were "shocked and humiliated," causing them to suffer "serious distress."

*Procedural Synopsis*

Plaintiffs' complaint sought relief against Dr. Soung on multiple legal theories and underwent several revisions in response to demurrers which were sustained with leave to amend. In ruling on the demurrer to the third amended complaint, Judge Murray issued a lengthy memorandum opinion in which he determined that the demurrer to the elder abuse cause of action against Dr. Soung should be sustained *without* leave to amend. In the same memorandum, Judge Murray sustained the demurrer to the cause of action for intentional infliction of emotional distress (IIED) *with* leave to amend, noting that the inclusion of "those facts set forth on page 5, line[s] 16-21 of Plaintiffs' points and authorities" would be sufficient to state a cause of action for IIED on a theory of recklessness.

Plaintiffs filed a fourth amended complaint to which Dr. Soung interposed a demurrer to the cause of action for IIED. The demurrer was heard by Judge Saiers, who sustained it with leave to amend. Plaintiffs then filed a fifth

amended complaint. This time Judge Saiers sustained the demurrer to the IIED claim without leave to amend.

After the foregoing orders were entered, Dr. Soung obtained an order granting summary judgment as to plaintiffs' only surviving cause of action, that of professional negligence, on the ground that the total recoverable damages against Dr. Soung could not exceed the amount plaintiffs already received from a settling codefendant. Plaintiffs appeal from the ensuing judgment entered by Judge Smith in favor of Dr. Soung.

### Appeal

Plaintiffs challenge the two rulings which eliminated their elder abuse and IIED causes of action respectively. On appeal from a final judgment, the appellate court "may review . . . any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the judgment or order appealed from or which substantially affects the rights of a party . . . ." (Code Civ. Proc., § 906.) ▮ We therefore review each order sustaining Dr. Soung's demurrer without leave to amend, applying the following principles: "On appeal from a dismissal after an order sustaining a demurrer, we review the order de novo, exercising our independent judgment about whether the complaint states a cause of action as a matter of law. [Citations.] We give the complaint a reasonable interpretation, reading it as a whole and viewing its parts in context. [Citations.] We deem to be true all material facts properly pled. [Citations.] We must also accept as true those facts that may be implied or inferred from those expressly alleged. [Citation.] If no liability exists as a matter of law, we must affirm that part of the judgment sustaining the demurrer. [Citation.] [¶] . . . A trial court abuses its discretion if it sustains a demurrer without leave to amend when the plaintiff shows a reasonable possibility to cure any defect by amendment. [Citations.]" (*Lazar v. Hertz Corp.* (1999) 69 Cal.App.4th 1494, 1500-1501 [82 Cal.Rptr.2d 368].)

### I

### The Elder Abuse Cause of Action

▮ Plaintiffs contend the trial court abused its discretion in sustaining Dr. Soung's demurrer to the elder abuse cause of action without leave to amend. As amended in 1991, the Elder Abuse Act was designed to protect elderly and dependent persons from abuse, neglect, or abandonment. (§ 15600; see *ARA Living Centers-Pacific, Inc. v. Superior Court* (1993) 18 Cal.App.4th 1556, 1559 [23 Cal.Rptr.2d 224].) In addition to adopting

measures designed to encourage reporting of abuse and neglect (§ 15630 et seq.), the Act authorizes the court to award attorney fees to the prevailing plaintiffs and allows survivors to recover pain and suffering damages in cases of intentional and reckless abuse where the elder has died. (§ 15657; see *Delaney v. Baker* (1999) 20 Cal.4th 23, 33 [82 Cal.Rptr.2d 610, 971 P.2d 986] (*Delaney*).)

In order to be entitled to these heightened remedies, section 15657 provides that the plaintiff must establish "recklessness, oppression, fraud, or malice in the commission of this abuse" by "clear and convincing evidence."[3] " 'Recklessness' refers to a subjective state of culpability greater than simple negligence, which has been described as a 'deliberate disregard' of the 'high degree of probability' that an injury will occur [citations][.] Recklessness, unlike negligence, involves more than 'inadvertence, incompetence, unskillfulness, or a failure to take precautions' but rather rises to the level of a 'conscious choice of a course of action . . . with knowledge of the serious danger to others involved in it.' [Citation.]" (*Delaney, supra,* 20 Cal.4th at pp. 31-32.)

 For demurrer purposes, the allegations of a complaint must be " 'liberally construed with a view to substantial justice between the parties.' " (*Michaelian v. State Comp. Ins. Fund* (1996) 50 Cal.App.4th 1093, 1105 [58 Cal.Rptr.2d 133].) A liberal construction of the pleading discloses the following salient facts: (1) Girtha developed a serious untreatable bedsore injury in August 1996 while she was housed at Covenant and Dr. Soung was her attending physician; (2) Covenant, with assistance from Dr. Soung, covered up and concealed the existence of the bedsore until intervention by a county ombudsman finally compelled Covenant to reveal the injury to plaintiffs; (3) over Dr. Soung's objection, Girtha was hospitalized for three days for treatment of the injury and then returned to Covenant; (4) Dr. Soung subsequently became aware of Girtha's inability to communicate and turned to plaintiffs for consultation regarding her care and treatment; (5) as Girtha's conditioned worsened, plaintiffs expressed the desire that she be transferred to a hospital, which was consistent with her wishes; Dr. Soung responded by criticizing the power of attorney by which Girtha gave plaintiffs decisionmaking authority over her treatment and

[3]Section 15657 provides in part: "Where it is proven by clear and convincing evidence that a defendant is liable for physical abuse . . . , neglect . . . , or fiduciary abuse . . . [of an elderly or dependent adult], and that the defendant has been guilty of recklessness, oppression, fraud, or malice in the commission of this abuse, in addition to all other remedies otherwise provided by law: [¶] (a) The court shall award to the plaintiff reasonable attorney's fees and costs. . . . [¶] (b) The limitations imposed by Section 3[7]7.34 of the Code of Civil Procedure [forbidding a decedent plaintiff's estate from obtaining pain and suffering damages] shall not apply. . . ."

opposed hospitalization; and (6) when Girtha's condition reached the critical stage, Dr. Soung gave notice of withdrawal as her physician, refused to respond to requests by Covenant's staff to hospitalize her, and abruptly abandoned her care. In pursuing this course of conduct, Dr. Soung acted recklessly.

Dr. Soung argues these allegations establish at most, a claim of professional negligence, but not "neglect" within the meaning of the Elder Abuse Act. We disagree.

Section 15610.07 states that "abuse of an elder" includes "neglect." "Neglect" is defined in section 15610.57, as "either of the following: [¶] (1) The negligent failure of any person having the care or custody of an elder or a dependent adult to exercise that degree of care that a reasonable person in a like position would exercise. [¶] . . . [¶] (b) *Neglect includes*, but is not limited to, *all of the following*: [¶] . . . [¶] (2) *Failure to provide medical care for physical and mental health needs*. . . ." (Italics added.) As stated in *Hongsathavij v. Queen of Angels etc. Medical Center* (1998) 62 Cal.App.4th 1123 [73 Cal.Rptr.2d 695], "[a] physician cannot just walk away from a patient after accepting the patient for treatment. A physician cannot withdraw treatment from a patient without due notice and an ample opportunity afforded to secure the presence of another medical attendant." (*Id.* at p. 1138, citing *Payton v. Weaver* (1982) 131 Cal.App.3d 38, 45 [182 Cal.Rptr. 225].)

We have no trouble concluding that a doctor who conceals the existence of a serious bedsore on a nursing home patient under his care, opposes her hospitalization where circumstances indicate it is medically necessary, and then abandons the patient in her dying hour of need commits neglect within the meaning of the Act. Further, if it can be proved by clear and convincing evidence that such acts were committed with recklessness, oppression, fraud, or malice, the heightened remedies of section 15657 will apply.[4]

Dr. Soung additionally claims he cannot be liable under the Elder Abuse Act because he was not Girtha's custodian or caretaker. He relies upon that language in section 15610.57 defining "neglect" as the negligent failure of

---

[4]The trial court predicated its order sustaining the demurrer to this cause of action without leave to amend on plaintiffs' failure or unwillingness to allege "willful misconduct" by Dr. Soung. That ruling was mistaken. Recklessly withdrawing needed medical care from an elderly patient with conscious disregard for the high probability of injury or suffering, whether "willful misconduct" or not, is precisely the sort of egregious behavior which the Legislature sought to remedy in passing the Act. (See §§ 15600, subds. (a), (d), 15610.57, subd. (b)(2).)

"any person having *the care or custody* of an elder . . . to exercise that degree of care that a reasonable person in a like position would exercise." (Italics added.) From the italicized wording, he concludes that this provision applies only to institutional health care facilities and cannot apply to physicians such as himself, who merely treat elderly patients on an "as needed" basis. He is wrong.

The Act was expressly designed to protect elders and other dependent adults who "may be subjected to abuse, neglect, or abandonment . . . ." (§ 15600, subd. (a).) Within the Act, two groups of persons who ordinarily assume responsibility for the "care and custody" of the elderly are identified and defined: health practitioners and care custodians. A "health practitioner" is defined in section 15610.37 as a *"physician* and surgeon, psychiatrist, psychologist, dentist, · . . ." etc., who "treats an elder . . . for any condition." (Italics added.) "Care custodians," on the other hand, are administrators and employees of public and private institutions that provide "care or services for elders or dependent adults," including nursing homes, clinics, home health agencies, and similar facilities which house the elderly. (§ 15610.17.) The Legislature thus recognized that *both* classes of professionals—health practitioners as well as care custodians—should be charged with responsibility for the health, safety and welfare of elderly and dependent adults. This recognition is made explicit in the "reporting" section of the Act which states that "*[a]ny person who has assumed full or intermittent responsibility for care or custody of an elder* or dependent adult, whether or not that person receives compensation, *including* . . . any elder or dependent adult care custodian, *health practitioner,* . . . is a mandated reporter." (§ 15630, subd. (a), italics added.)

Unlike, for example, section 15610.07, subdivision (b), which imposes liability only upon "care custodians,"[5] the statute defining "neglect" is not restricted to care custodians. Instead it applies generally to anyone having "care or custody" of an elder, and specifically mentions the "[f]ailure to provide medical care for physical and mental health needs." (§ 15610.57, subd. (b)(2).) Similarly, the heightened remedies section is not limited to care custodians but targets any "defendant" who commits abuse or neglect and does so with "recklessness, oppression, fraud, or malice." (§ 15657.)

Dr. Soung's argument is also vitiated by the California Supreme Court's recent decision in *Delaney, supra,* 20 Cal.4th 23. There, the defendant, a nursing care home, was found liable for reckless neglect in failing to care for

---

[5]Section 15610.07, subdivision (b) defines " 'Abuse of an elder' " as "[t]he deprivation *by a care custodian* of goods or services that are necessary to avoid physical harm or mental suffering." (Italics added.)

an elderly decedent who contracted a horrible bedsore. (*Id.* at pp. 27-28.) The defendant claimed that since it was a licensed health care provider, it could be liable only for professional negligence, and was exempt from liability under section 15657. The defendant predicated this claim on section 15657.2, which states that actions based on a health care professional's negligent act or omission shall remain governed by those laws applicable to professional negligence. (*Delaney, supra,* at p. 27.)

The *Delaney* court rejected this argument, noting that the distinction between "reckless neglect" within the meaning of section 15657 and "professional negligence" as described in section 15657.2 was one of degree, and did not turn on the defendant's status as a health care professional or custodian. "Section 15657.2 can . . . be read as making clear that the acts proscribed by section 15657 do not include acts of simple professional negligence, but refer to forms of abuse or neglect performed with some state of culpability greater than mere negligence." (*Delaney, supra,* 20 Cal.4th at p. 32.) The court held that health care professionals are not exempt from the heightened remedies triggered by section 15657 when they are guilty of "reckless neglect." (20 Cal.4th at pp. 31-32.)

*Delaney* establishes that health care providers are not exempt from liability for reckless neglect simply because the cause of action arises from the rendition of health care services. Rather, health practitioners who assume care or custody of the elderly are subject to liability if their misconduct rises to the level of neglect, abuse, or abandonment.

Dr. Soung's interpretation would impose liability on residential institutions housing the elderly for willful deprivation of medical care, but exempt physicians from engaging in the same conduct. The statutory language does not so provide. Moreover, there is no evidence the Legislature intended to leave such a loophole in the Act. As *Delaney* teaches, liability under the Act should not turn upon the licensing status of the defendant. (*Delaney, supra,* 20 Cal.4th at p. 35.) We conclude that Dr. Soung's status as a physician does not immunize him from liability for elder abuse.

## II

### *Intentional Infliction of Emotional Distress**

. . . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The judgment is affirmed as to the court's ruling regarding the intentional infliction of emotional distress cause of action and reversed as to the court's

---

*See footnote, *ante,* page 966.

ruling on the elder abuse cause of action. The cause is remanded to the trial court with directions to vacate its order sustaining the demurrer to the elder abuse cause of action of the third amended complaint and enter a new order overruling the demurrer as to that cause of action only. Plaintiffs shall recover their costs on appeal. (Cal. Rules of Court, rule 26(a).)

Scotland, P. J., and Nicholson, J., concurred.

Respondent's petition for review by the Supreme Court was denied August 23, 2000.