[No. B168257. Second Dist., Div. Seven. Oct. 23, 2003.]

RALPHS GROCERY COMPANY, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
DAVID SWANSON, Real Party in Interest.

COUNSEL

Thelen Reid & Priest, Thomas E. Hill, Robert Spagat; and Matthew C. Kane for Petitioner.

No appearance for Respondent.

Kumetz & Glick, Fred Kumetz, Stephen Glick; Law Offices of Ian Herzog, Ian Herzog; Daniels, Fine, Israel & Schonbuch, Paul R. Fine and Scott A. Brooks for Real Party in Interest.

OPINION

**PERLUSS, P. J.**—Deducting cash and inventory shortages from the sales commissions otherwise earned by the driver of a sandwich truck is unlawful. (*Kerr's Catering Service v. Department of Industrial Relations* (1962) 57

Cal.2d 319 [19 Cal.Rptr. 492, 369 P.2d 20] (*Kerr's*); see Cal. Code Regs., tit. 8, §§ 11040, subd. 8, 11070, subd. 8.) Does the same legal principle prohibit a large corporate retailer from implementing an incentive compensation plan for managerial store-level employees in which the amount of the incentive bonus is based on the achievement of store sales and profitability goals? The trial court held it did. We agree, but only in part.

To the extent the bonus calculation includes expense items the Legislature or the Industrial Welfare Commission has declared may not be charged to an employee (deductions for any part of the cost of workers' compensation claims or cash shortages for nonexempt employees), such a bonus plan is unlawful. However, other expense items, even those beyond the individual manager's direct control, may lawfully be considered in profit-based bonus programs, which can serve as an effective economic incentive to managerial level employees to maximize company profit by increasing revenue and minimizing expenses. Because the complaint in this case alleges the bonus plan adopted by Ralphs Grocery Company includes deductions for expenses within the first prohibited category, it states causes of action for unlawful deductions from wages and unlawful business practices. Accordingly, the trial court properly overruled Ralphs's demurrer.

## FACTUAL AND PROCEDURAL BACKGROUND

David Swanson, a former store manager at a Ralphs grocery store, filed a lawsuit individually and as a putative class representative alleging Ralphs is violating the Labor Code and an Industrial Welfare Commission (Commission) wage order for nonexempt employees and committing unlawful business practices by basing its incentive compensation, or bonus, program for store managers and other employees on the *net* earnings of a store.[1] According to the complaint, Ralphs is "wrongfully deduct[ing] expenses from the wages of their employees, including [Swanson], which expenses the law requires . . . to be borne by . . . employers. In other words, [Swanson and the

---

[1] Swanson proposes to represent current and former managers and all other employees of Ralphs "who were paid a bonus that was calculated using a formula which includes deductions for any expenses and losses due to cash shortages, merchandise shortages and shrinkage, [and] workers' compensation" not caused by the willful or dishonest acts or gross negligence of the employee. The proposed class includes "all employees who have worked for [Ralphs] within the State of California, including, but not limited to, operating managers, assistant managers, general managers, market managers, district managers and/or operations managers, grocery managers, produce managers, meat managers, fish managers, service deli managers, bakery managers, floral managers, deli managers, liquor managers, and all other employees who were paid a bonus [that was calculated under the allegedly impermissible formula]."

class he proposes to represent] are forced to carry the burden of losses from their respective stores in violation of California law."[2]

Swanson alleges causes of action for: (1) unlawful deductions from earnings in violation of Labor Code sections 221, 400 to 410 and 3751[3] and California Code of Regulations, title 8, section 11070, subdivision 8; (2) unlawful and unfair business practices pursuant to Business and Professions Code section 17200; and (3) failure to pay wages upon discharge in violation of section 201. Swanson seeks damages, injunctive relief, disgorgement of profits, penalties, attorney fees and costs.

Ralphs demurred to the complaint on the ground Swanson could not state a cause of action because its bonus plan is not unlawful and a good faith dispute exists as to whether Ralphs failed to pay Swanson all wages due upon discharge. According to Ralphs, its method of calculation with deductions for business losses and expenses is lawful because the bonus is paid in addition to the employees' regular wages and the deductions are simply part of the formula to calculate the bonus, not impermissible deductions from amounts already paid or due to the employees.

The trial court overruled the demurrer, relying on *Quillian v. Lion Oil Company* (1979) 96 Cal.App.3d 156 [157 Cal.Rptr. 740] (*Quillian*), in which the Court of Appeal had applied *Kerr's* to hold an employer could not lawfully calculate a "bonus" for its employees by using a formula that deducted business losses from a percentage commission on products sold. Because Ralphs's bonus constituted "wages" as defined by the Labor Code, under *Quillian* Swanson's allegation that Ralphs's calculation method required its employees to bear the burden of business losses and expenses including cash shortages, merchandise shortages and shrinkage and workers' compensation costs was sufficient to withstand demurrer. As to the fourth cause of action for failure to pay wages upon discharge, the court ruled Swanson had sufficiently pleaded a willful failure to pay wages to former employees in violation of section 201.

---

[2] Swanson also challenged in his complaint alleged deductions for tort claims of nonemployees and "other losses beyond Plaintiff's control, and/or not caused by the willful negligence, dishonest act(s) or gross negligence of the employee Plaintiffs." In its return to Ralph's writ petition, however, Swanson narrows his challenge to deductions for cash shortages, merchandise shortages and workers' compensation claims. We, therefore, limit our analysis to those three categories.

[3] All statutory references are to the Labor Code unless otherwise specified.

After Ralphs petitioned this court for a writ of mandate compelling the trial court to vacate its order, we issued an order to show cause why the requested relief should not be granted.[4]

## DISCUSSION

### 1. *Standard of Review*

■ "The standard of review for an order overruling a demurrer is de novo. The reviewing court accepts as true all facts properly pleaded in the complaint in order to determine whether the demurrer should be overruled. [Citation.]" (*Casterson v. Superior Court* (2002) 101 Cal.App.4th 177, 182–183 [123 Cal.Rptr.2d 637]; see also *Mack v. Soung* (2000) 80 Cal.App.4th 966, 971 [95 Cal.Rptr.2d 830] [all properly pleaded allegations deemed true, regardless of plaintiff's ability to later prove them].) We liberally construe the pleading with a view to substantial justice between the parties. (Code Civ. Proc., § 452; *Kotlar v. Hartford Fire Ins. Co.* (2000) 83 Cal.App.4th 1116, 1120 [100 Cal.Rptr.2d 246].) We do not, however, assume the truth of the legal contentions, deductions or conclusions; questions of law, such as the interpretation of a statute, are reviewed de novo. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967 [9 Cal.Rptr.2d 92, 831 P.2d 317]; *Rudd v. California Casualty Gen. Ins. Co.* (1990) 219 Cal.App.3d 948, 951 [268 Cal.Rptr. 624].)

### 2. *Governing Law*

#### a. *The Statutes and Wage Order*

##### i. *Section 221*

Section 221 provides, "It shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee." " 'Wages' includes all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation." (§ 200.) "Section 221 was enacted in order to prevent employers from utilizing secret deductions or kickbacks to pay employees less than their stated wages." (*Finnegan v. Schrader* (2001) 91 Cal.App.4th 572, 584 [110 Cal.Rptr.2d 552], citing *Kerr's, supra,* 57 Cal.2d at p. 328.) Through section 221 and related statutes, the Legislature has recognized "there is in this state a fundamental and substantial public policy protecting

---

[4] Ralphs does not contest in this writ proceeding the trial court's additional ruling denying its motion to strike portions of Swanson's complaint.

an employee's wages." (*Phillips v. Gemini Moving Specialists* (1998) 63 Cal.App.4th 563, 574 [74 Cal.Rptr.2d 29]; see § 224 [allowing employer to deduct from employee, with prior written authorization, insurance premiums, hospital or medical dues and other amounts allowed pursuant to state or federal law].)

### ii. *Sections 400 to 410*

█ Sections 400 to 410 provide the limited circumstances under which an employer can exact a cash bond from its employee and the protections afforded to an employee when such bonds are permitted. "The very design and purpose of the statutes . . . was to forestall a very real danger of fraud, and embezzlement, as well as danger of misappropriation of the funds of an employee deposited with an employer in trust. The self-evident purpose of the legislation . . . is to protect that larger portion of the public who are employees and who, in many instances, are forced through economic necessity to find employment by meeting whatever requirements are set by a prospective employer. Under such conditions, employer and employee do not deal on an equal footing, and the force of economic conditions opens the way for fraudulent practices which the [bond] legislation . . . seeks to abate." (*People v. Vandersee* (1956) 139 Cal.App.2d 388, 390–391 [294 P.2d 77] [rejecting constitutional challenge to bond statutes].)

### iii. *Section 3751*

Section 3751, subdivision (a), relating to workers' compensation specifically, provides, "No employer shall exact or receive from any employee any contribution, or make or take any deduction from the earnings of any employee, either directly or indirectly, to cover the whole or any part of the cost of compensation under this division [on workers' compensation and insurance]." █ Under this section, courts have prohibited employers from using an employee's earnings to contribute to or offset the cost of workers' compensation. (See, e.g., *Wesley v. Board of Pension Commissioners* (1981) 119 Cal.App.3d 471, 474 [174 Cal.Rptr. 75] ["It has been held that section 3751 prohibits a municipal employer from offsetting the entire amount of workers' compensation benefits against its pension liability when the pension is funded by employee deductions"].)

### iv. *California Code of Regulations, Title 8, Section 11070*

█ Section 1173 authorizes the Commission to promulgate orders regulating wages, hours and working conditions throughout the state. (*Monzon v. Schaefer Ambulance Service, Inc.* (1990) 224 Cal.App.3d 16, 29 [273 Cal.Rptr. 615].) The Commission has promulgated 13 orders governing

specific industries (Cal. Code Regs., tit. 8, §§ 11010, 11020, 11030, 11040, 11050, 11060, 11070, 11080, 11090, 11100, 11110, 11120, 11130) and three orders covering designated occupations (Cal. Code Regs., tit. 8, §§ 11140, 11150, 11160), as well as an order applicable to "miscellaneous employees" (Cal. Code Regs., tit. 8, § 11170) and a general minimum wage order (Cal. Code Regs., tit. 8, § 11000).

California Code of Regulations, title 8, section 11070, subdivision 8, applicable to the mercantile industry, provides, "No employer shall make any deduction from the wage or require any reimbursement from an employee for any cash shortage, breakage, or loss of equipment, unless it can be shown that the shortage, breakage, or loss is caused by a dishonest or willful act, or by the gross negligence of the employee." ■ Executive and administrative employees are exempt from this wage order if their duties and responsibilities meet certain specified criteria involving the management of the enterprise for which they are employed. (Cal. Code Regs, tit. 8, § 11070, subd. 1(A)(1) & (2).)

### b. *The Cases*

### i. *Kerr's Catering Service v. Department of Industrial Relations*

In *Kerr's, supra,* 57 Cal.2d 319, a catering business employed saleswomen to drive lunch trucks to business and industrial establishments and sell food and beverage items. (*Id.* at p. 322.) These employees were unionized and paid under a collective bargaining agreement through which they received a base salary plus a 15 percent monthly commission on sales exceeding $475 a week. (*Ibid.*) The sales commission—but not the base salary—was subject to reduction for any cash and inventory shortages attributable to the sales during the month. (*Ibid.*) The Department of Industrial Relations challenged the deductions under the applicable wage order, issued by the Commission, similar to the wage order at issue here, providing, " 'No employer shall make any deduction from the wage of an employee for any cash shortage, breakage, or loss of equipment, notwithstanding any contract or arrangement to the contrary, unless it can be shown that the shortage, breakage, or loss is caused by a dishonest or willful act, or by the culpable negligence of the employee.' " (*Ibid.*)

The trial court held the wage order was in excess of the Commission's statutory authority and unconstitutional. Reversing the trial court and directing that judgment be entered for the state defendants, the Supreme Court held deductions for cash shortages not due to the employee's dishonest or willful act or culpable negligence could properly be characterized as standard conditions of labor, even if such deductions did not reduce the employee's

earnings below the minimum wage and, therefore, the wage order prohibiting such deductions was a proper exercise of the Commission's statutory powers. Although the Court's holding was limited to the narrow question of the Commission's authority to adopt the challenged wage order, the Court in its analysis emphasized the public policy supporting the broad range of legislation that protects employee wages: "Wages of workers in California have long been accorded a special status generally beyond the reach of claims by creditors including those of an employer. This public policy has been expressed in the numerous statutes regulating the payment, assignment, exemption and priority of wages." (*Kerr's, supra,* 57 Cal.2d at p. 325.) In this regard, the Court found the deductions from wages due "in contravention of the spirit, if not the letter, of the Employee's Bond Law" in sections 400 through 410. (*Kerr's,* at p. 328.) The Court also held "[t]he use of the device of deductions creates the danger that the employer, because of his superior position, may defraud or coerce the employee by deducting improper amounts" in violation of section 221, which was enacted to prevent employers from implementing "devices to reduce the wage scale." (*Id.* at pp. 328–329.)

The Court further explained, "legislative disapproval of deductions exists in the reliance of the employee on receiving his expected wage, whether it be computed upon the basis of a set minimum, a piece rate, or a commission. To subject that compensation to unanticipated or undetermined deductions is to impose a special hardship on the employee." (*Kerr's, supra,* 57 Cal.2d at p. 329.) Thus, rather than requiring employees to bear the burden of business losses, the Court held: "[S]ome cash shortages, breakage and loss of equipment are inevitable in almost any business operation. It does not seem unjust to require the employer to bear such losses as expenses of management . . . . [¶] Furthermore, the employer may, and usually does, either pass these costs on to the consumer in the form of higher prices or lower his employees' wages proportionately, thus distributing the losses among a wide group. In addition, the employer is free to discharge any employee whose carelessness causes the losses, and he is not prohibited from deducting for cash shortages caused by the 'dishonest or willful act, or by the culpable negligence of the employee.' " (*Ibid.*)

### ii. *Quillian v. Lion Oil Co.*

In *Quillian, supra,* 96 Cal.App.3d 156, the employee, a manager of two self-serve stations that marketed fuel, oil and sundry items, was paid a fixed-amount base salary and a monthly bonus " 'as an incentive to increase sales and reduce cash and merchandise shortage' " at the stations. (*Id.* at p. 159.) "Consistent with such dual objective, the [bonus] amount paid was measured on the basis of sales volumes, less merchandise or cash shortages at

the stations during the month." (*Ibid.*) Relying on *Kerr's*, the Court of Appeal affirmed the judgment in the employee's favor, finding the bonus was "in contravention of the public policy expressed in sections 400 to 410 of the Labor Code pertaining to cash bonds that may be required of employees" because it required the employee to carry the burden of losses from the station. (*Quillian,* at p. 163.)

Although the employer had acknowledged section 221 "prohibits deductions from wages due or earned," it maintained, similar to Ralphs's argument here, the bonus was legal because no deductions were made from the actual bonus paid but merely factored into the calculation to compute the bonus amount. (*Quillian, supra,* 96 Cal.App.3d at p. 160.) The court rejected this argument: "The bonus herein described is, in fact, a scheduled payment based on the number of gallons of motor fuel sold plus a 1 percent commission on other sales. Rather than call this incentive payment a commission and then deduct for shortages in contravention to *Kerr*[*'s*], [the employer] deducts shortages from the payment and calls the final result a bonus. [The employer] then self-righteously proclaims that no deductions were made from the bonus. Unfortunately, the result is the same. The manager carries the burden of losses from the station." (*Id.* at p. 163.) Thus, that the employer labeled the wage a "bonus," as opposed to a "commission" as in *Kerr's*, did not merit a different result because both are "wages" within the meaning of section 200 and, therefore, "[a]lthough factored in as one component of the manager's bonus, the deductions herein are as much a hardship as deductions made from final wages." (*Quillian,* at p. 163; see § 200 [defining "wages" as *"all* amounts for labor performed" (italics added)].)

### iii. *Hudgins v. Neiman Marcus Group, Inc.*

In *Hudgins v. Neiman Marcus Group, Inc.* (1995) 34 Cal.App.4th 1109 [41 Cal.Rptr.2d 46] (*Hudgins*), the Court of Appeal held Neiman Marcus's commission program violated section 221 and constituted an unfair business practice under Business and Professions Code section 17200 because it unlawfully deducted "a pro rata share of commissions previously paid for 'unidentified returns' from the wages of all sales associates in the section of the store where the merchandise is returned . . . ." (*Id.* at p. 1117.)

According to the *Hudgins* court, "the California courts have long held that, because of the special consideration accorded to wages, sections 221 and 400 through 410 prohibit deductions from wages for business losses unless the employer can establish that the loss was caused by a dishonest or willful act, or by the culpable negligence of the employee." (*Hudgins, supra,* 34 Cal.App.4th at p. 1111.) Citing *Kerr's* and *Quillian,* the court explained that section 221 "has long been held to prohibit deductions from an employee's

wages for cash shortages, breakage, loss of equipment, and other business losses that may result from the employee's simple negligence." (*Id.* at p. 1118.) "Even where fraud is not involved, . . . the Legislature has recognized the employee's dependence on wages for the necessities of life and has, consequently, disapproved of unanticipated or unpredictable deductions because they impose a special hardship on employees. [Citations.]" (*Id.* at p. 1119.)

Applying these principles to the commission deductions for unidentified returns, the court found, "By its terms, the unidentified returns policy calls for deductions from earned commission wages of all sales associates a sum of money representing what would otherwise be business losses occasioned by the misconduct or negligence of some of its employees and customers. The deduction is unpredictable, and is taken without regard to whether the losses were due to factors beyond the employee's control. Neiman Marcus cannot avoid a finding that its unidentified returns policy is unlawful simply by asserting that the deduction is just a step in its calculation of commission income." (*Hudgins, supra,* 34 Cal.App.4th at pp. 1123–1124, citing *Quillian, supra,* 96 Cal.App.3d at p. 156.)

### 3. *The Trial Court Properly Overruled the Demurrer*

Ralphs and the amici curiae that have filed briefs on its behalf present persuasive arguments, supported by substantial academic literature, that profit-based compensation plans benefit both employers and employees. Notwithstanding the contrary holding in *Quillian, supra,* 96 Cal.App.3d 156, Ralphs also forcefully demonstrates that, as a matter of economics, calculation of an incentive bonus based on profitability by taking into account not only revenues but also store expenses in accordance with standard accounting principles differs markedly from reducing (or recapturing) wages through prohibited deductions. Nonetheless, to the extent the Legislature or, as applied to nonexempt employees, the Commission in its authorized wage orders has prohibited the use of certain expenses in determining wages due an employee, economic reality must yield to regulatory imperative.

Accordingly, based on the allegation that Ralphs includes in its calculation of profit-based bonuses a charge for workers' compensation costs, Swanson has stated causes of action, as to both exempt and nonexempt employees, for violation of section 3751, which prohibits employers from directly or indirectly holding its employees accountable for workers' compensation costs. As to nonexempt employees, the alleged calculation based on cash and merchandise shortages is sufficient to withstand demurrer based on the Supreme Court's interpretation in *Kerr's* of a wage order identical in all relevant respects to the order governing nonexempt employees working at Ralphs.

However, to the extent further proceedings in this litigation reveal Swanson and members of the class he proposes to represent are exempt employees, the calculation accounting for cash and merchandise shortages is lawful. Nothing in the Labor Code itself prevents Ralphs from making the reasonable and economically sound choice to reward exempt employees with a profit-based bonus that acts as an incentive to maximize company profit by increasing revenue and minimizing expenses.

a. *Swanson Has Stated Claims for Unlawful Deductions from Wages and Unlawful Business Practices By Alleging Ralphs Allocates Workers' Compensation Costs to Its Employees*

Section 3751 prohibits employers from "mak[ing] or tak[ing] any deduction from the earnings of any employee, either directly or indirectly, to cover the whole or any part of the cost of [workers'] compensation." Interpreting this statute according to its plain language (*Lennane v. Franchise Tax Bd.* (1994) 9 Cal.4th 263, 268 [36 Cal.Rptr.2d 563, 885 P.2d 976]), Ralphs's bonus plainly constitutes employee "earnings" within the meaning of the statute; and the alleged deduction[5] for workers' compensation costs in the bonus calculation is, at the very least, an indirect means of holding employees responsible for such costs.

Swanson correctly observes that, by shifting at least partial responsibility for workers' compensation costs to managerial employees, Ralphs may create an atmosphere that discourages the reporting of such claims in contravention of the policy behind section 3751. On the other hand, creating an incentive to improve workplace safety and thus reduce injuries and the need for damage awards is consistent with the overall goal of the workers' compensation system.[6] It is not our role to resolve this policy dispute. ■ In light of the plain language and clear meaning of the statute, Swanson can pursue his claims for violation of section 3751 and unlawful business practices based on the allegation that Ralphs's factors workers' compensation costs into the calculation of profit for its bonus program.[7]

---

[5] Although the bonus plan was not attached to the complaint, we accept Swanson's allegations in the complaint regarding the plan as true for purposes of ruling on demurrer. (*Casterson v. Superior Court, supra,* 101 Cal.App.4th at pp. 182–183.)

[6] Continuing the policy debate, Ralphs notes a manager who discourages a worker from filing a workers' compensation claim faces civil penalties and potential criminal liability. (§ 132a, subd. (2).) On the other hand, the San Diego-Imperial Counties Labor Council in an amicus curie brief on behalf of Swanson suggests that workplace safety can be encouraged by rewarding mangers who limit injuries with an additional bonus, rather than reducing a revenue-based incentive plan with prohibited charges.

[7] Swanson alleges a willful failure to pay wages due upon discharge within the meaning of section 201 on the theory that, as to each class member who is a former employee, Ralphs owed additional wages that would have been paid had it not been deducting for workers'

b. *Swanson Has Stated Causes of Action for Unlawful
 Deductions from Wages and Unlawful Business Practices As
 to Nonexempt Employees, But Not Exempt Employees, By
 Alleging Ralphs Factors Cash and Merchandise Shortages in
 to Its Bonus Calculation*

i. *Nonexempt employees*

Nonexempt employees[8] of Ralphs are subject to Wage Order No. 7-2001 (Mercantile Industry), which prohibits deductions from wages for "any cash shortage, breakage, or loss of equipment, unless it can be shown that the shortage, breakage, or loss is caused by a dishonest or willful act, or by the gross negligence of the employee." (Cal. Code Regs., tit. 8, § 11070, subd. 8.) The parties agree the challenged bonus constitutes "wages" within the meaning of the Labor Code. (§ 200 ["wages" constitutes *all* amounts for labor performed by employees of *every* description" regardless of the "method of calculation" (italics added)].) They also agree that expense deductions included in the calculation of the bonus are made without regard to whether the loss is caused by a dishonest or willful act or by the gross negligence of the employee. Ralphs argues, however, that, because the bonus is paid in addition to regular wages and the deductions are made during the bonus calculation itself, as opposed to after the amount due the employee is

compensation costs in calculating the bonus. (See § 201 [providing terms by which employer must pay employees wages earned and unpaid at the time of discharge].) Based on our finding Swanson has stated a cause of action pursuant to section 3751, he is also entitled to pursue his additional claim for unpaid wages due upon discharge.

[8] California Code of Regulations, title 8, section 11070, subdivision 1(A), defines exempt employees to whom the wage order does not apply. An executive exemption applies to those (a) whose duties and responsibilities involve the management of the enterprise in which he/she is employed or of a customarily recognized department or subdivision thereof; and (b) who customarily and regularly directs the work of two or more other employees; and (c) who has the authority to hire and fire other employees or whose suggestions and recommendations as to the hiring and firing and as to the advancement and promotion or any other change of status of employees will be given particular weight; and (d) who customarily and regularly exercises independent judgment and discretion; and (e) who is primarily engaged in duties that meet the test of exemption under the Fair Labor Standards Act; and (f) who earns a monthly salary equivalent to no less than two times the state minimum wage for full-time employment. (Cal. Code Regs., tit. 8, § 11070, subd. 1(A)(1).) An administrative exemption applies to those (a) whose duties and responsibilities involve the performance of office or nonmanual work directly related to management policies or general business operations of his/her employer or their employer's customers; (b) who customarily and regularly exercises discretion and independent judgment; and (c) who regularly and directly assists a proprietor or an employee employed in a bona fide executive or administrative capacity; or (d) who perform under only general supervision work along specialized or technical lines; or (e) who executes under only general supervision special assignments and tasks; and (f) who is primarily engaged in duties that meet the test of exemption; and (g) who earns a monthly salary equivalent to no less than two times the state minimum wage for full-time employment. (Cal. Code Regs, tit. 8, § 11070, subd. 1(A)(2).)

determined, its employees are not suffering a reduction in earnings, which the wage order is designed to prevent.[9] Under the reasoning in *Kerr's*, we are compelled to disagree.

Whatever the economic sense of Ralphs's position, as to nonexempt employees the legislative and administrative policies protecting employee wages and the Supreme Court's implementation of those policies preclude bonus plan deductions for cash and inventory shortages. First, neither the wage order nor the Labor Code itself makes the distinction between "regular" wages and a bonus that Ralphs attempts to write into them. Instead, both refer simply to "wages"; and even Ralphs agrees its bonus falls within the statutory definition of "wages." Second, Ralphs's effort to distinguish its bonus program on the basis that the deductions are taken as a percentage, not on a dollar-for-dollar basis as was true in *Kerr's* and *Quillian*, is unpersuasive. Again, neither the wage order nor the legislative scheme allows for any such distinction. Indeed, the definition of "wages" in section 200 specifically includes any amount paid to an employee regardless of the method of calculation. In addition, if for some reason an item of expense may not properly be included in a calculation of "profit," from a purely economic standpoint it is equally improper to include all or only a portion of the item (although the impact on the result will obviously differ).

Most significantly, Ralphs's argument as it applies to nonexempt employees is simply irreconcilable with the Supreme Court's decision in *Kerr's*. As previously noted, the wage order prohibiting deductions for cash and inventory shortages at issue in *Kerr's* is identical for all practical purposes to the order now governing Ralphs's nonexempt employees. Kerr's Catering Service employees, like Ralphs's employees, received their "regular wages" and a supplemental payment (called a "commission" in *Kerr's*) measured by revenues reduced by certain expenses. The Supreme Court held the employer's use of cash shortages to reduce the amount of supplemental payment otherwise due the employee violated the wage order—that is, including the amount of cash shortages in the calculation of the supplemental payment constituted a prohibited "deduction from wages" of an employee. (*Kerr's, supra,* 57 Cal.2d at pp. 323–324; accord, *Quillian, supra,* 96 Cal.App.3d at p. 163.) As previously discussed, Ralphs's bonus or incentive compensation

[9] Ralphs argues Swanson was an exempt managerial employee. However, the class Swanson proposes to represent contains a wide range of employees including assistant managers, deli managers and "all other employees" paid a bonus based on the challenged formula. At this early stage of the litigation, it is unclear whether or to what extent the employees in the proposed class are exempt employees as defined by the Commission's wage orders. (See *Nordquist v. McGraw-Hill Broadcasting Co.* (1995) 32 Cal.App.4th 555, 562 [38 Cal.Rptr.2d 221] [employer bears the burden of proving an employee is exempt; exemptions are narrowly construed against the employer and their application is limited to those employees plainly and unmistakably within their terms].)

plan cannot be distinguished on any meaningful basis from the revenue-less-expenses supplemental payment commission found unlawful in *Kerr's*.

In *Kerr's* the Supreme Court found "some cash shortages, breakage and loss of equipment are inevitable in almost any business operation" and required the employer to "bear such losses as expenses of management." (*Kerr's, supra,* 57 Cal.2d at p. 329.) That finding is equally applicable here: ▮ Whatever cash and merchandise shortages are inevitable in Ralphs's business operations are to be borne as "expenses of management." (*Ibid.*) Ralphs is not permitted to require its nonexempt employees to be the insurers of its business losses and expenses. Based on the legislative and administrative policies that protect nonexempt employee wages and prevent deductions from their wages for business losses and expenses not caused by the employee's dishonest or willful acts or gross negligence, as to nonexempt employees, Swanson can pursue his claims for unlawful deductions from wages and unlawful business practices.[10]

### ii. *Exempt employees*

For exempt employees, as to whom the wage order does not apply (Cal. Code Regs., tit. 8., § 11070, subd. 1(A)), the result is different. ▮ Nothing in the Labor Code itself, unlike the wage orders applicable to nonexempt employees, expressly prohibits deductions from wages for cash or merchandise shortages. Nor does the calculation of an incentive bonus based on profitability resemble, literally or "in spirit," either the recapture of wages previously paid in violation of section 221 or exacting a cash bond in contravention of sections 400 through 410. Moreover, the policy considerations that supported the result in *Kerr's* are simply not applicable to exempt employees for whom receipt of an incentive bonus based on a previously disclosed profitability formula does not threaten "special hardship" because of unanticipated or unpredictable deductions from their wages. (*Hudgins, supra,* 34 Cal.App.4th at p. 1119.)

Indeed, the *Kerr's* court specifically held it was not "unjust" for inevitable business losses, such as cash shortages, breakage and loss of equipment, to be borne as "expenses of management." (*Kerr's, supra,* 57 Cal.2d at p. 329.) By using the term "management," the Supreme Court suggested the legitimacy of requiring exempt employees to bear some burden of business losses and expenses. (See Cal. Code Regs., tit. 8, § 11070, subd. 1(A) [defining exempt

---

[10] As with the workers' compensation costs, because we find Swanson has stated a cause of action for unlawful deductions from earnings based on the alleged use of cash and merchandise shortages in the bonus calculation, he also can pursue his cause of action for unpaid wages due upon discharge for amounts he alleges he was entitled to had Ralphs not calculated the bonus by deducting for cash and merchandise shortages.

employees as those who "manage" the enterprise for which they are employed].) At the very least, it would require a significant extension of the Supreme Court's dicta regarding the underlying spirit of the Labor Code provisions protecting workers' wages to conclude an incentive compensation plan that determines an exempt employee's bonus on a full range of revenue and expense items, including cash shortages, is unlawful.

The distinction we recognize between exempt management-level employees and nonexempt employees in terms of responsibility for certain business losses not only finds support in the Commission's wage orders and the *Kerr's* Court's policy analysis but also accords with common sense. Through a profit-based bonus plan, exempt employees are encouraged to manage their business enterprise to increase revenue and minimize expenses and losses. (See Gifford, *Labor Policy in Late Twentieth Century Capitalism: New Paradoxes for the Democratic State* (1997) 26 Hofstra L.Rev. 85, 156 ["the profit-sharing arrangement transforms the traditional American adversary relationship between employer and employee into one of cooperation, since now both sides seek the same goal"].)[11] In their management role exempt employees have control of business operations that may directly affect revenue and expenses. There is nothing unfair in basing a part of the compensation for such employees on a formula that rewards them for effective supervision that, in turn, controls expenses, including reduced cash and merchandise shortages.

The class Swanson proposes to represent contains a wide range of employees from store managers, like Swanson, to deli managers and "other employees" paid a bonus based on the challenged formula.[12] At this early stage of the litigation, it is unclear whether the employees in the proposed class are exempt employees as defined by the Commission's wage orders. For example, store managers, like Swanson, may meet the executive exemption if their duties and responsibilities include supervision of other employees, the authority to hire and fire other employees, the exercise of discretion and independent judgment and other specified requirements. In contrast, a deli

---

[11] Justice Schauer's concurring opinion in *Kerr's* recognized the benefit to both employer and employee of profit-based wages: "The employer, of course, has the benefit of increased productivity . . . [and] the [employee], with little risk and with much to gain, acquires the additional status of entrepreneur, making it possible for him to realize tangible rewards for his diligence and care. In incorporating such a[n] . . . agreement the parties exercise their constitutional freedom to contract, in a manner consonant with the declared public policy of the state. Our decision today should not be interpreted as encouraging further governmental impairment of that essential freedom." (*Kerr's, supra,* 57 Cal.2d at p. 334 (conc. opn. of Schauer, J.).)

[12] According to Ralphs, the bonus plan applies to "store-level managers." Thus, whether the allegation in the complaint that other types of managers and employees are paid a bonus according to the challenged formula holds true must be addressed at a subsequent point in the litigation. (See fn. 9, *ante.*)

manager may not have those same duties and responsibilities. Because the extent to which Swanson and the members of the class he proposes to represent are exempt employees cannot be determined at this point, the complaint survives Ralphs's challenge on demurrer.

## DISPOSITION

The petition for writ of mandate is denied. Each party is to bear its and his own costs in this proceeding.

Woods, J., and Muñoz, (Aurelio) J.,\* concurred.

A petition for a rehearing was denied November 13, 2003, and the opinion was modified to read as printed above. The petitions of both petitioner and real party in interest for review by the Supreme Court were denied February 18, 2004. Chin, J., did not participate therein. Baxter, J., and Brown J., were of the opinion that the petitions should be granted.

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.