[No. B188087. Second Dist., Div. Seven. Nov. 28, 2006.]

MARTHA CHARNAY, Plaintiff and Appellant, v.
JOSEPH M. COBERT et al., Defendants and Respondents.

## COUNSEL

Kabateck Brown Kellner, Michael R. Brown and Frank E. Marchetti for Plaintiff and Appellant.

Fonda & Fraser, Todd E. Croutch and Daniel K. Dik for Defendants and Respondents.

## OPINION

**PERLUSS, P. J.**—Martha Charnay appeals from the judgment entered after the trial court sustained without leave to amend a demurrer filed by Charnay's former attorney, Joseph M. Cobert, and his law firm, Joseph Cobert, a Professional Corporation (the Cobert firm), to Charnay's fourth amended complaint for professional negligence/legal malpractice, breach of fiduciary duty, breach of contract, fraud and negligent misrepresentation. Because each cause of action is adequately pleaded, we reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. Charnay's Dispute with Her Neighbors[1]

In 1995 Charnay and her husband, David Charnay, purchased approximately two and one-half acres of a 60-acre tract in Calabasas subject to

---

[1] We accept as true all facts properly pleaded in the fourth amended complaint to determine whether the demurrer should be overruled. (*Caliber Bodyworks, Inc. v. Superior Court* (2005) 134 Cal.App.4th 365, 373 [36 Cal.Rptr.3d 31]; *Casterson v. Superior Court* (2002) 101 Cal.App.4th 177, 182–183 [123 Cal.Rptr.2d 637] ["The reviewing court accepts as true all facts properly pleaded in the complaint in order to determine whether the demurrer should be overruled."]; see *Mack v. Soung* (2000) 80 Cal.App.4th 966, 971 [95 Cal.Rptr.2d 830] [all properly pleaded allegations deemed true, regardless of plaintiff's ability to later prove them].)

certain conditions, covenants and restrictions (CC&R's). The tract had been subdivided in the 1980's into four lots: three improved lots and one large 26-acre unimproved lot. Richard and Pamela Aronoff purchased the 26-acre unimproved lot in 1998. After land subsidence damaged a sloped portion of the tract directly impacting the Aronoffs' lot and extending to the primary private road through the tract, the Aronoffs demanded each of the neighbors pay one-fourth of the $72,000 cost to repair the slope, relying on language in the CC&R's they claimed required contribution when the expenditure for slope repair was for the benefit of the entire subdivision.[2] The Charnays refused the Aronoffs' demand for payment, claiming the CC&R's did not require their contribution.

## 2. *The Underlying Lawsuit*

The Aronoffs sued the Charnays in October 2001, seeking to recover $18,903.64 from the Charnays in a limited civil action. The Aronoffs also sought prejudgment interest and attorney fees incurred in prosecuting the action pursuant to a fee-shifting provision in the CC&R's.[3] The Charnays, who were "unsophisticated in legal matters," retained Cobert to represent them in connection with the Aronoffs' lawsuit.[4]

---

[2] At Cobert's request and over Charnay's objection, the trial court took judicial notice of the original CC&R's recorded in the Los Angeles County Recorder's Office and a 1998 amendment to the CC&R's. The fourth amended complaint does not indicate which paragraph of the CC&R's the Aronoffs relied on to demand the contribution from their neighbors. However, the 1998 amendment provides: "Lot 4 of Tract 43565 ('Lot 4') contains various slope areas and landscaped maintenance areas (the 'Common Slope and Maintenance Areas') used in connection with the private road providing access to the Lots known as St. Andrews Lane. Such Common Slope and Maintenance Areas benefit all of the Lots by providing support and landscaping relating to St. Andrews Lane. . . . [¶] . . . [¶] . . . The costs of . . . maintenance [of such common areas], installation and repair shall be borne in the same manner as provided for the Easements in paragraph 2 of the [CC&R's]."

Paragraph 2(f) of the CC&R's provides, "Costs of maintenance of the Easements . . . shall be borne equally among the owners of the four affected Lots. Provided, however, that should any such costs be incurred as the result of negligence of any Owner or an Owner's family members . . . then *all of such costs shall be paid by such owner. Should any Lot Owner fail to* contribute his share of such costs or fail to pay costs for which such Owner is responsible hereunder, the remaining owners shall have the right to recover said costs in an action at law, together with interest at the legal rate, all costs of suit, and actual attorney fees."

[3] In addition to paragraph 2(f) of the CC&R's authorizing recovery of attorney fees in an action to enforce that provision (see fn. 2, above), paragraph 23 of the CC&R's provides that, in any litigation to enforce the CC&R's, "the prevailing party shall be entitled to recover all costs of suit, including reasonable attorney's fees."

[4] At the time the Charnays retained Cobert, Martha Charnay was 60 years old and David Charnay was 89 years old. David Charnay died during the pendency of the underlying lawsuit. Martha Charnay continued to defend the Aronoffs' lawsuit and to prosecute her cross-complaint on the advice of Cobert.

### 3. *The Retainer Agreement with the Cobert Firm*

According to the written retainer agreement between the Cobert firm and the Charnays, attached as an exhibit to the operative fourth amended complaint, the Cobert firm agreed to provide legal services to the Charnays on a "time and charge" basis. The agreement specifically states, "No guarantees of any specific results can be made and our fee is not contingent upon any specific results." The retainer agreement also provides the Charnays would be billed monthly and, if the Cobert firm did not receive any billing inquiry from the Charnays within 10 days after the billing statement had been sent, the firm would assume the Charnays did not dispute the billing statement's accuracy.[5]

### 4. *The Cobert Firm's Representation of the Charnays*

According to Charnay, Cobert initially recommended the Charnays settle the Aronoffs' action; however, when Cobert learned during his initial meeting with the Charnays that they had "other unresolved issues with other tract owners,"[6] Cobert, recognizing an opportunity to generate significant attorney fees, changed his recommendation and suggested the Charnays vigorously defend the lawsuit and pursue a cross-complaint for declaratory relief, reformation, breach of fiduciary duty and indemnity against the Aronoffs and other neighbors in the 60-acre tract. Believing they had a meritorious defense to the Aronoffs' lawsuit and a meritorious cross-complaint, the Charnays followed Cobert's advice and authorized Cobert and the Cobert firm to defend (rather than settle) the action and file the cross-complaint against each of their neighbors. The Charnays' cross-complaint elicited a separate cross-action by the Charnays' neighbors to recover homeowners' assessments that had been withheld by the Charnays. Cobert did not tell the Charnays of their potential exposure to liability for the opposing parties' attorney fees if they did not prevail in the action.

---

[5] The fifth paragraph of the retainer agreement provides, "Our fees and costs will be billed monthly early in the month next following the month in which the fees and costs were incurred; and such bill will be payable upon receipt. If we have not heard from you within ten (10) days after sending you our statement, then we shall assume the statement is accurate as presented. Any delay in our billings will not result in any waiver of our fees."

[6] Cobert states in the respondents' brief the "unresolved issues" referred to in the fourth amended complaint involved disputes over quarterly assessments for maintenance of common items, but that fact is not pleaded in either the fourth amended complaint or any of the preceding complaints.

### 5. *The Underlying Judgment and Attorney Fee Award*

After lengthy discovery, unsuccessful summary judgment motions, and a 15-day bench trial, the trial court entered a judgment against the Charnays on the Aronoffs' complaint, the neighbors' cross-complaint and the Charnays' cross-complaint. Charnay was ordered to pay $18,903.64 as repair costs to the Aronoffs, $25,800 in unpaid homeowner assessments (that she alleges Cobert advised her to withhold during the lawsuit) and the aggregate sum of $580,000 for the opposing parties' attorney fees pursuant to the fee-shifting provision in the CC&R's. For their part, Cobert and the Cobert firm billed Charnay more than $360,000 for services provided in connection with the underlying action.

### 6. *The Instant Action*

#### a. *The legal malpractice claim*

The first cause of action for professional negligence in the operative fourth amended complaint[7] alleged Cobert and the Cobert firm breached their duty of care by advising Charnay to defend (rather than settle) the Aronoffs' action and to file a separate action against the other neighbors concerning the Charnays' right to withhold homeowners' assessments. Cobert proffered this advice knowing that both actions could expose the Charnays to liability for attorney fees far in excess of the $18,903.64 at issue in the Aronoffs' lawsuit, but did not inform the Charnays of that possibility. According to Charnay, but for Cobert's negligence, misrepresentations and omissions, she would have been able to settle the Aronoffs' lawsuit for no more than $25,000, the maximum recovery available in the limited civil action. Instead, as a result of Cobert's breach of duty, a judgment was entered against her for more than $600,000. To satisfy the judgment and her own approximately $400,000 attorney fee obligation, Charnay was forced to deplete her personal savings and retirement income and sell her home. Had Charnay been advised of the consequences of not prevailing, including the risk of being held liable for the opposing parties' attorney fees were she to lose at trial, she would not have acceded to Cobert's advice to go forward with the litigation and would not have continued with the litigation in the face of escalating litigation costs on both sides.

---

[7] Charnay filed the fourth amended complaint after Cobert and his firm successfully demurred to the third amended complaint and Charnay was given leave to amend. The record is silent as to the procedural history of the prior iterations of the complaint.

b. *Breach of fiduciary duty*

In her second cause of action for breach of fiduciary duty, Charnay alleged Cobert and his firm breached their fiduciary duties by billing for tasks never performed, billing at Cobert's billing rate for tasks performed by his secretaries and office assistants, and assuring Charnay she would recover all of her attorney fees in the action.[8]

c. *Breach of contract*

In her third cause of action for breach of contract, Charnay alleged she and Cobert orally modified the November 2001 written retainer agreement in March 2004 when Cobert agreed not to require payment for any legal bills until the conclusion of the litigation. Other than that modification, the November 2001 retainer agreement, with its corresponding billing rates therein outlined, remained unchanged. Charnay alleges Cobert breached the retainer agreement by inflating the bills and billing for tasks at his billing rate that were never performed or were performed by others with much lower billing rates than those charged.

d. *Fraud and negligent misrepresentation*

In her fourth cause of action for fraud and deceit and her fifth cause of action for negligent misrepresentation, Charnay alleged she had repeatedly expressed her concerns to Cobert about the escalating costs in connection with the litigation and continued to pursue the litigation only because Cobert had repeatedly assured her the opposing parties could not prevail and she would recover all her attorney fees from the opposing parties at the end of the litigation. According to Charnay, Cobert made this representation even though he knew or should have known there was a substantial probability Charnay would not prevail on any of the claims in the underlying action and she would be liable for the opposing parties' fees as well as her own. Charnay alleged Cobert made these representations specifically to induce her to

---

[8] Charnay also alleged in support of her breach of fiduciary duty claim that the retainer agreement violated various rules of professional conduct because it failed to state the scope of the representation and allowed Cobert to change his hourly billing rate "without notice." In addition, Charnay alleged Cobert engaged in the practice of "block billing" (billing for multiple tasks in a single entry), which she alleged violated Business and Professions Code section 6148, subdivision (b).

continue with the litigation so that he could continue to generate attorney fees.

### 7. *The Demurrer*

Cobert and the Cobert firm filed a demurrer to the fourth amended complaint and successfully requested (over Charnay's objection) the court take judicial notice of the CC&R's recorded in the official records of the Los Angeles County Recorders Office. The trial court sustained the demurrer to the fourth amended complaint without leave to amend, concluding each of the claims was legally deficient and entered judgment against Charnay.

## DISCUSSION

### 1. *Standard of Review*

On appeal from an order dismissing a complaint after the sustaining of a demurrer, we independently review the pleading to determine whether the facts alleged state a cause of action under any possible legal theory.[9] (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967 [9 Cal.Rptr.2d 92, 831 P.2d 317]; *Berger v. California Ins. Guarantee Assn.* (2005) 128 Cal.App.4th 989, 998 [27 Cal.Rptr.3d 583].) We give the complaint a reasonable interpretation, "treat[ing] the demurrer as admitting all material facts properly pleaded" but do not "assume the truth of contentions, deductions or conclusions of law. [Citation.]" (*Aubry*, at p. 967.) We liberally construe the pleading with a view to substantial justice between the parties. (Code Civ. Proc., § 452; *Kotlar v. Hartford Fire Ins. Co.* (2000) 83 Cal.App.4th 1116, 1120 [100 Cal.Rptr.2d 246].) "If the trial court has sustained the demurer, we determine whether the complaint states facts sufficient to state a cause of action. If the court sustained the demurrer without leave to amend, as here, we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment. [Citation.] If we find that an amendment could cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred. [Citation.] The plaintiff has the

---

[9] A complaint must contain "[a] statement of the facts constituting the cause of action, in ordinary and concise language." (Code Civ. Proc., § 425.10, subd. (a)(1).) The plaintiff must allege ultimate facts, not conclusions of law, that "as a whole apprise[] the adversary of the factual basis of the claim." (*Estate of Archer* (1987) 193 Cal.App.3d 238, 245 [239 Cal.Rptr. 137].)

burden of proving that an amendment would cure the defect." (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 [6 Cal.Rptr.3d 457, 79 P.3d 569].)

2. *The Trial Court Erred in Sustaining the Demurrer*

a. *Charnay adequately stated a claim for legal malpractice*

To state a cause of action for legal malpractice, a plaintiff must plead "(1) the duty of the attorney to use such skill, prudence, and diligence as members of his or her profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the breach and the resulting injury; and (4) actual loss or damage resulting from the attorney's negligence." (*Coscia v. McKenna & Cuneo* (2001) 25 Cal.4th 1194, 1199 [108 Cal.Rptr.2d 471, 25 P.3d 670].) To show damages proximately caused by the breach, the plaintiff must allege facts establishing that, *"but for* the alleged malpractice, it is more likely than not the plaintiff would have obtained a more favorable result." (*Viner v. Sweet* (2003) 30 Cal.4th 1232, 1244 [135 Cal.Rptr.2d 629, 70 P.3d 1046]; see Judicial Council of Cal. Civ. Jury Instns. (2006) CACI No. 601 [plaintiff must prove he or she "would have obtained a better result if [defendant] had acted as a reasonably careful attorney"].)

In the instant case, Charnay alleged she retained Cobert and the Cobert firm to assist her in understanding her rights and obligations under the CC&R's and to advise her in connection with the Aronoffs' lawsuit. She alleges Cobert breached his duty of care to her by failing to properly advise her of her obligation to contribute to the slope repair and to pay homeowner assessments required under the CC&R's and, most particularly, to advise her of her potential exposure to the opposing parties' attorney fees if she did not prevail in the Aronoffs' action or her cross-action. As for damages, she alleges that, had she been properly advised, she would have settled the lawsuit for no more than the maximum $25,000 amount recoverable in a limited civil action, far less than the $600,000-plus judgment (exclusive of interest) entered against her at the end of the protracted litigation.

In ruling that Charnay had not alleged damages "proximately caused" by the breach, the trial court reasoned the fourth amended complaint failed to include facts showing the Aronoffs would have agreed to such a settlement. And, according to the trial court, absent such allegations, any suggestion that Charnay would have received a more favorable outcome but for Cobert's breach is too speculative to state a claim. (See *Thompson v. Halvonik* (1995)

36 Cal.App.4th 657, 663 [43 Cal.Rptr.2d 142] (*Thompson*) ["absent evidence that Vesper would have settled with respondents under exactly the same circumstances it settled with the Padway firm, actual harm from respondents' conduct is only a subject of surmise, given the myriad of variables that affect settlements of medical malpractice actions"]; *Marshak v. Ballesteros* (1999) 72 Cal.App.4th 1514, 1519 [86 Cal.Rptr.2d 1] (*Marshak*) ["[P]laintiff simply alleges that the case was worth more than he settled it for. He proffered no evidence to establish the value of his case, other than his own declaration that the family residence was worth more, and the accounts receivable were worth less, than they were valued at for the purposes of settlement. Even if he were able to prove this, however, he would not prevail. For he must *also* prove that his ex-wife would have settled for less than she did, or that, following trial, a judge would have entered judgment more favorable than that to which he stipulated."].)

In contrast to *Thompson, supra,* 36 Cal.App.4th 657, and *Marshak, supra,* 72 Cal.App.4th 1514, both decided on summary judgment, this is not a case where the allegations of the likelihood of settlement or the settlement amount are too speculative, at least to state a claim at this early stage of the proceedings. Charnay adequately alleged she was prepared to resolve the action and that, but for the advice of counsel to defend the action and file a cross-complaint against the neighbors (generating a cross-complaint by them against her), the Aronoffs' action would have been resolved for $25,000 or less. Contrary to Cobert's argument (adopted by the trial court in sustaining the demurrer), Charnay need not expressly allege the Aronoffs would have accepted such a settlement: Implicit in the allegation that the case could have been settled for the maximum amount recoverable in a limited civil action is that, having filed a lawsuit seeking less than $19,000, the Aronoffs, at least at an early step of the litigation before they had incurred significant attorney fees, would have been willing to settle the case at or near the $25,000 level.[10] Alternatively, resolution of the case for an amount close to $25,000 could have been achieved, even without the Aronoffs' consent, by allowing a default judgment to be entered against the Charnays. Finally, as Charnay argued in the hearing on demurrer, whether the Charnays could have settled the matter for the $25,000 figure alleged as opposed to some greater amount (inclusive of additional attorney fees) is immaterial. Charnay need only allege that, but for Cobert's malpractice, she would have obtained a "more favorable result" than the $600,000-plus judgment ultimately rendered against her.

---

[10] Attorney fees are not included in the $25,000 ceiling for limited civil actions. (See Code Civ. Proc., § 85, subd. (a) ["As used in this section 'amount in controversy' means the amount of the demand, or the recovery sought, or the value of the property, or the amount of the lien, that is in controversy in the action, exclusive of attorneys' fees, interest, and costs."].)

(*Viner v. Sweet, supra*, 30 Cal.4th at p. 1244.)[11] Of course, whether Charnay will be able to prove the element of damages or any of the other elements of her legal malpractice cause of action remains to be determined. At this stage of the proceedings, however, Charnay has alleged facts sufficient to state a professional negligence claim.

As an alternative basis for sustaining the demurrer to her legal malpractice cause of action, the trial court ruled the CC&R's put Charnay on constructive notice of her obligation to pay the opposing parties' attorney fees in any action arising under the CC&R's. Because she was on notice of her potential liability for the opposing parties' attorney fees, the court reasoned, she can claim no damages "proximately caused" by Cobert's failure to advise her of that possibility, notwithstanding her allegation that she relied on Cobert's advice regarding her rights and liabilities under the CC&R's. In reaching this conclusion, the trial court erroneously relied on cases holding, when a person enters into an unambiguous written agreement, he or she is presumed to understand it as a matter of law and is estopped from claiming otherwise. (E.g., *Jefferson v. Department of Youth Authority* (2002) 28 Cal.4th 299, 303 [121 Cal.Rptr.2d 391, 48 P.3d 423] (*Jefferson*) [" ' "The general rule is that when a person with the capacity of reading and understanding an instrument signs it, he is, in the absence of fraud and imposition, bound by its contents, and is estopped from saying that its provisions are contrary to his intentions or understanding." ' "]; *Palmquist v. Mercer* (1954) 43 Cal.2d 92, 98 [272 P.2d 26] (*Palmquist*) [same].)

*Jefferson, supra*, 28 Cal.4th 299, and *Palmquist, supra*, 43 Cal.2d 92, specifically address disputes between contracting parties. Both cases hold a contracting party is legally estopped from circumventing the agreement by declaring the contract's objective terms do not coincide with his or her subjective intention. Neither case has any application to a legal malpractice action in which a party to a contract alleges she retained a lawyer for the specific purpose of advising her with respect to the meaning of the agreement and asserts she was thereafter damaged by the lawyer's negligent advice. Whatever the ultimate merit of her malpractice claim, Charnay plainly is not estopped from alleging she relied on her lawyer's expertise and advice in interpreting her rights and obligations under the CC&R's. (See, e.g., *Neel v. Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 188 [98

---

[11] Even if the trial court believed it was necessary for Charnay to allege the Aronoffs would have been willing to settle the case for the amount alleged, it was error to sustain the demurrer without leave to amend absent any indication Charnay could not amend the complaint to include that allegation. (*Schifando v. City of Los Angeles, supra*, 31 Cal.4th at p. 1081 [demurrer should not be sustained if any "reasonable possibility" defect can be cured by amendment].)

Cal.Rptr. 837, 491 P.2d 421] [classic legal malpractice action involves an attorney's alleged failure to apply his or her "specialized skills and knowledge" to a particular set of facts or circumstances].)

  b.  *Charnay adequately stated a claim for breach of fiduciary*
      *duty*

■   To establish a cause of action for breach of fiduciary duty, a plaintiff must demonstrate the existence of a fiduciary relationship, breach of that duty and damages. (*Benasra v. Mitchell Silberberg & Knupp LLP* (2004) 123 Cal.App.4th 1179, 1183 [20 Cal.Rptr.3d 621]; *Pierce v. Lyman* (1991) 1 Cal.App.4th 1093, 1101 [3 Cal.Rptr.2d 236].) Charnay alleges Cobert breached his fiduciary duty by billing for tasks not performed and by billing at an inflated rate. Although, as the trial court found, the retainer agreement on its face may not have been "substantively unconscionable," by alleging Cobert and his firm improperly inflated the billings sent to Charnay by including tasks not performed and incorrectly using higher hourly rates than justified, Charnay has adequately pleaded a claim for breach of fiduciary duty. (See *Bird, Marella, Boxer & Wolpert v. Superior Court* (2003) 106 Cal.App.4th 419, 431 [130 Cal.Rptr.2d 782] [client who alleged former defense counsel fraudulently inflated his charges stated breach of fiduciary duty claim; all members of the bar owe clients "fiduciary duty to charge only fair, reasonable and conscionable fees"].)

In ruling Charnay had not adequately pleaded a breach of fiduciary duty claim, the trial court emphasized the retainer agreement required Charnay to dispute the legal bills within 10 days of receipt. Because Charnay did not allege she had fulfilled this contractual "condition precedent" for challenging the bills, the trial court concluded she could not state a claim for breach of fiduciary duty as a matter of law. The trial court's reliance on the notice provision in the retainer agreement is unsound: If Cobert breached his fiduciary duty by fraudulently billing Charnay for services not performed at all or by using inflated rates for services performed by others, Charnay's failure to comply with the contractual notice provision does not immunize that breach, which is based on a duty arising from the attorney-client relationship itself and not the retainer agreement.[12]

---

[12] The trial court also suggested the provision in the retainer agreement purporting to make all specified billing rates "subject to change without notice" effectively forecloses allegations that Cobert, by billing at rates higher than those identified in the retainer agreement, engaged in fraudulent billing practices. Plainly, billing for work not performed or performed by others with lower billing rates than those charged constitutes a breach of fiduciary duty (and fraud), whether or not the contract properly authorizes the change of billing rates "without notice." (See *Bird, Marella, Boxer & Wolpert v. Superior Court, supra*, 106 Cal.App.4th at p. 431.)

In any event, the trial court's recognition of the 10-day notice provision in the retainer agreement as a defense to a claim for breach of fiduciary duty (or to Charnay's claim for breach of contract, for that matter) suffers from multiple defects. First, as written, the notice provision does not purport to limit Charnay's right to file a lawsuit challenging the fee statements if she fails to meet the 10-day requirement; rather, it simply provides that the Cobert firm "shall assume the statement is accurate as presented" if no timely objection is made.

Second, if the notice provision were interpreted to be an agreement to shorten the applicable limitations period, it would be unreasonable as a matter of law and thus unenforceable. Under California law parties may agree to a provision shortening the statute of limitations, "qualified, however, by the requirement that the period fixed is not in itself unreasonable or is not so unreasonable as to show imposition or undue advantage. [Citations.]" (*Capehart v. Heady* (1962) 206 Cal.App.2d 386, 388 [23 Cal.Rptr. 851]; see *Beeson v. Schloss* (1920) 183 Cal. 618, 622–623 [192 P. 292]; *Hambrecht & Quist Venture Partners v. American Medical Internat., Inc.* (1995) 38 Cal.App.4th 1532, 1548 [46 Cal.Rptr.2d 33].) When, as in this case, defendants have demurred to the complaint based on a contractual limitations period, "the real question to be determined here is whether the allegations of the complaint show that the limitation is unreasonable. . . . The question is one of law, namely, is the period of limitation, *in itself*, unreasonable. [Citation.]" (*Capehart*, at p. 388.) Whatever the outside limit may be for shortening a limitations period (see, e.g., *Tebbets v. Fidelity & Casualty Co.* (1909) 155 Cal. 137, 139 [99 P. 501] [holding on demurrer that six month contractual limitations period was not unreasonable]), we have no doubt requiring a client to assert a claim for breach of contract against her attorney within 10 days of receipt of a billing statement is inherently unreasonable.

Third, as we held in *Moreno v. Sanchez* (2003) 106 Cal.App.4th 1415, 1430 [131 Cal.Rptr.2d 684], "[A] contractually shortened limitations period has never been recognized outside the context of straightforward transactions in which the triggering event for either a breach of a contract or for the accrual of a right is immediate and obvious. Moreover, no decision upholding the validity of a contractually shortened limitation period has done so in the context of an action against a professional or skilled expert where breach of a duty is more difficult to detect. Instead, most reported decisions upholding shortened periods involve straightforward commercial contracts plus the unambiguous breaches or accrual of rights under those contracts."

Finally, enforcement of the notice provision in the manner suggested by the trial court would abrogate the well-established delayed discovery rule

applicable to actions asserting breach of fiduciary duty.[13] (See *April Enterprises, Inc. v. KTTV* (1983) 147 Cal.App.3d 805, 827 [195 Cal.Rptr. 421] ["It is well-settled that the [delayed] discovery rule applies to causes of action involving breach of a fiduciary relationship"]; cf. *Neel v. Magana, Olney, Levy, Cathcart & Gelfand, supra,* 6 Cal.3d at p. 188 [An action for professional malpractice, for example, typically involves the professional's failure to apply his or her specialized skills and knowledge: "Corollary to this expertise is the inability of the layman to detect its misapplication; the client may not recognize the negligence of the professional when he sees it."]; Code Civ. Proc., § 340.6 [delayed discovery rule applies to legal malpractice actions].) As we have explained in *Moreno v. Sanchez, supra,* 106 Cal.App.4th at pages 1430 to 1431, the delayed discovery rule is founded on important public policy considerations; contractual efforts to eviscerate the delayed discovery rule are thus void as against public policy. Accordingly, even if the notice provision were otherwise applicable as a potential defense to Charnay's breach of fiduciary duty claim, it would have been error for the trial court not to grant her leave to amend to allege when she discovered the alleged improper billing practices.

### c. *Charnay adequately stated claims for intentional fraud and negligent misrepresentation*

The elements of fraud are " '(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.' " (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638 [49 Cal.Rptr.2d 377, 909 P.2d 981]; see also *Agricultural Ins. Co. v. Superior Court* (1999) 70 Cal.App.4th 385, 402 [82 Cal.Rptr.2d 594].) The elements of negligent misrepresentation are similar to intentional fraud except for the requirement of scienter; in a claim for negligent misrepresentation, the plaintiff need not allege the defendant made an intentionally false statement, but simply one as to which he or she lacked any reasonable ground for believing the statement to be true. (*Bily v. Arthur Young & Co.* (1992) 3 Cal.4th 370, 407–408 [11 Cal.Rptr.2d 51, 834 P.2d 745]; see also *Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1239, fn. 4 [44 Cal.Rptr.2d

---

[13] The delayed discovery rule provides a cause of action accrues when the plaintiff discovers or should have discovered all facts essential to his or her cause of action. (See *Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1109 [245 Cal.Rptr. 658, 751 P.2d 923] [common law rule that an action accrues on the date of injury applies "only as modified by the 'discovery rule.' The discovery rule provides that the accrual date of a cause of action is delayed until the plaintiff is aware of her injury and its negligent cause"].)

352, 900 P.2d 601] [negligent misrepresentation is a species of the tort of deceit and like fraud, requires a misrepresentation, justifiable reliance and damage].)[14]

Charnay alleged at specifically identified times following her execution of the retainer agreement she confronted Cobert about the escalating attorney fees and costs she had incurred in this limited civil action and inquired whether it was worth continuing to litigate the matter. According to Charnay, Cobert assured her on each of these specified occasions that she need not be concerned about the mounting attorney fees because she would definitely prevail and recover those fees from the opposing parties at the end of the action. Charnay alleged Cobert made these representations knowing they were false because he did not believe, and indeed there was no reasonable basis to believe, Charnay could prevail in the action. As a result of Cobert's misrepresentations, she continued to vigorously litigate the matter and incurred additional attorney fee obligations, both her own and ultimately the opposing parties'. In addition, Charnay alleged Cobert engaged in fraudulent billing practices, including billing for tasks not performed.

Plainly, as we have explained, the allegations relating to fraudulent billing practices are sufficient to withstand demurrer, and the trial court's reliance on Charnay's purported failure to adhere to the 10-day notice provision in the retainer agreement as an immunizing factor is error. The additional justifications proffered by the trial court for rejecting her fraud claim are also erroneous. For example, Cobert argued (and the trial court agreed) that, in light of the plain and unambiguous "no guarantees" clause in the retainer agreement, and the additional clause requiring any modification of the fee portion of the agreement to be in writing,[15] Charnay could not reasonably rely on any subsequent oral representation declaring her victory certain and her ability to recover all of her attorney fees a foregone conclusion.

█ Again, whatever the likelihood of Charnay's ability at a later stage of the proceedings to demonstrate justifiable reliance on Cobert's representations concerning her guaranteed success and ability to recover attorney fees, she

---

[14] Fraud and negligent misrepresentation must be pleaded with particularity and by facts that " ' "show how, when, where, to whom, and by what means the representations were tendered." ' " (*Lazar v. Superior Court, supra,* 12 Cal.4th at p. 645.)

[15] Paragraph 2 of the retainer agreement requires all fee modifications to be in writing. It does not state that any other modification to the agreement must be in writing: "Except as may otherwise be agreed upon in writing, any and all legal services rendered by us on your behalf, whether consultation, litigation, meetings . . . shall be billed to you on a time and charges basis . . . . Oral estimates of fees are not binding on JOSEPH M. COBERT, A PROFESSIONAL CORPORATION (the 'firm') as a maximum fee, a fee range, or otherwise. Only written statements of fixed fees, fee range, or maximum fees signed by a principal of the firm will be binding."

has adequately pleaded the element of justifiable reliance. Charnay alleged Cobert falsely told Charnay she need not be concerned about escalating costs because she would recover those costs at the end of the litigation. Charnay relied on that representation in continuing with the litigation rather than making any efforts to resolve it. Whether Charnay's reliance on that representation was reasonable under the circumstances is not a question properly resolved on demurrer. (See, e.g., *Alliance Mortgage Co. v. Rothwell, supra,* 10 Cal.4th at p. 1239 [" 'Except in the rare case where the undisputed facts leave no room for a reasonable difference of opinion, the question of whether a plaintiff's reliance is reasonable is a question of fact.' "].)

■ Finally, the trial court also ruled Charnay's fraud claim was barred under the parol evidence rule because the allegations Cobert assured Charnay she would recoup her attorney fees contradicted the "no guarantees" clause in the written retainer agreement. Invocation of the parol evidence rule in this context is unwarranted. The parol evidence rule, codified in Code of Civil Procedure section 1856, subdivision (a), prohibits a party from resorting to extrinsic evidence of a prior or contemporaneous oral agreement to contradict a plain and unambiguous term of a fully integrated agreement.[16] Charnay's allegations, however, involve promises made subsequent to the execution of the parties' retainer agreement, not a prior or contemporaneous oral agreement. Accordingly, the parol evidence rule is simply inapplicable. (*Marani v. Jackson* (1986) 183 Cal.App.3d 695, 699, fn. 2 [228 Cal.Rptr. 518] [parol evidence rule excludes only extrinsic evidence of prior or contemporaneous oral agreements, not subsequent oral agreements]; *Conley v. Matthes* (1997) 56 Cal.App.4th 1453, 1465 [66 Cal.Rptr.2d 518] [same].)[17]

### d.  *Charnay has adequately alleged breach of contract*

Charnay's breach of contract claim is premised on the same allegations comprising her legal malpractice, breach of fiduciary duty and fraud claims and was dismissed as duplicative of causes of action the trial court erroneously found were not properly pleaded. In fact, Charnay adequately alleged Cobert breached the retainer agreement by, among other things, billing in excess of the amounts agreed to in the retainer agreement and for tasks not performed. These allegations are sufficient to state a claim for breach of contract.

---

[16] Code of Civil Procedure section 1856, subdivision (a), provides, "Terms set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contracted by evidence of any prior agreement or of a contemporaneous oral agreement."

[17] Although we have considerable doubt whether the retainer agreement, devoid of an integration clause or other indicia of integration, was intended by the parties to be a fully integrated agreement, we do not reach that issue in light of our holding the parol evidence rule is inapplicable in any event.

## DISPOSITION

The judgment is reversed. On remand the trial court is directed to vacate its order sustaining the demurrer without leave to amend, to enter a new order overruling the demurrer and to conduct further proceedings not inconsistent with this opinion. Charnay is to recover her costs on appeal.

Johnson, J., and Zelon, J., concurred.