Filed 1/3/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| CORDOBA CORPORATION,<br><br>    Cross-complainant and<br>    Appellant,<br><br>    v.<br><br>CITY OF INDUSTRY,<br><br>    Cross-defendant and<br>    Respondent. | B316304<br><br>Los Angeles County<br>Super. Ct. No. 19STCV10150 |

APPEAL from an order of the Superior Court of Los Angeles County, Steven J. Kleifield, Judge.  Affirmed.

Gordon Rees Scully Mansukhani, Louis Dorny and Don Willenburg; Alvarado Smith, Raul F. Salinas, Frances Q. Jett and Monisha A. Coelho for Cross-complainant and Appellant.

Casso & Sparks, James M. Casso, Bianca Sparks, John J. Harris and Carolin Sahimi for Cross-defendant and Respondent.

_____

The City of Industry sued Cordoba Corporation, among others, after uncovering allegedly fraudulent billings for a solar energy development. Cordoba filed a cross-complaint, but the trial court granted the City's special motion to strike it as a strategic lawsuit against public participation (Code Civ. Proc., § 425.16), or anti-SLAPP motion. We affirm the order.

Undesignated statutory citations are to the Code of Civil Procedure.

I

Cordoba is a firm specializing in civil engineering and contract management. In August 2015, the City hired Cordoba as a consultant to review reports and technical studies and to develop plans related to City-owned property. The City and Cordoba entered into several contracts for this work, and the City paid Cordoba a monthly retainer of $45,000. One contract was the Real Estate Advisory Services Agreement, which we call the Agreement. Section 15 of the Agreement required Cordoba to submit any proposed subconsultant agreement to the City for approval.

In May 2016, the City entered a land lease with San Gabriel Valley Water and Power, LLC to develop a solar energy farm at a property called Tres Hermanos Ranch. We call this entity the Developer. The lease and its amendments provided the City would reimburse up to $20 million of the Developer's costs related to the project. The lease allowed the City to request evidence of the work performed.

In 2017, the City began to receive requests under the Public Records Act (Gov. Code, § 6252 et seq.) from nearby cities and others for documents related to the lease. In February and again in March 2018, the City asked the Developer for

documentary evidence of the work so far completed and reimbursed. It set a deadline of March 12, 2018. The Developer did not provide documentation until May 9, 2018. Because the City in turn had not supplied documents requested under the Public Records Act, in April 2018 two neighboring cities took legal action against the City.

On March 14, 2018, Cordoba gave the City written notice of resignation. By mid-2018, the City had paid all Cordoba's outstanding invoices, except for some Cordoba voluntarily withdrew. Cordoba did not demand any other fees.

On May 23, 2018, the City terminated the lease with the Developer. The Developer continued to submit invoices for work performed, although it had exhausted the $20 million cap.

In March 2019, the City filed a complaint against the Developer for violating the False Claims Act (Gov. Code, § 12650 et seq.) (the Act) and defrauding the City by submitting false or inflated invoices for work not actually performed. In March 2020, the City received a discovery response showing a company called Mojave Green Power, LLC was a 50 percent owner of the Developer. Mojave Green's sole member and manager was one Frank Hill.

The City also served a records subpoena on Cordoba for documents related to the Tres Hermanos project, requesting its communications and agreements with the Developer or other defendants, including Hill. Cordoba's response revealed that in November 2015, Cordoba hired Frank Hill to consult on "real estate and related advisory services" for the City for a monthly fee of $20,000. Cordoba provided Hill's invoices of $20,000 to $25,000, which Cordoba had paid each month from November 2015 to January 2018. Cordoba never informed the City of its

3

contract with Hill or shared these invoices during its work under the Contracts.

In September 2020, the City filed its First Amended Complaint against the Developer and named Cordoba as a codefendant.  It accused Cordoba, among others, of violation of the Act, fraud, unfair business practices (Bus. & Prof. Code, § 17200 et seq.), breach of contract, and breach of the implied covenant of good faith and fair dealing.  The City alleged Cordoba subcontracted its work under the Agreement without the required authorization, that Cordoba was passing along about half of its fees from the City to Hill, and that it held out Hill, who had a controlling interest in the Developer, as a representative of the City when the City in fact had no connection to him.  The City said Hill, Cordoba, and other defendants conspired to put Cordoba in charge of review of the Developer's invoices to ensure those invoices were approved with minimal oversight, "in order to conceal the fact that the project was a sham and that no substantive work was actually being done."  The City specifically claimed Cordoba both submitted false invoices itself and knew about the Developer's false submissions but, instead of alerting the City, conspired with other defendants to conceal these facts.

In response, Cordoba filed a cross-complaint against the City for breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory relief.

In its first cause of action, Cordoba alleged the City's lawsuit breached paragraph 4(c) of the Agreement, which addresses payment of invoices and requires 30-day notice of any dispute over fees.  Cordoba claimed damages for "significantly increased costs of staffing, investigation, accounting, attorney's

4

fees and related costs" due to the City's years-long delay in discovering the fraud and raising the issue.

Regarding the breach of the implied covenant of good faith and fair dealing, Cordoba alleged the City's dispute with the Developer and confusion about the future of the Tres Hermanos project caused Cordoba to "los[e] confidence" in its work with the City and to "form[] the opinion that the City was not headed in a positive direction." Because of this, Cordoba gave notice of resignation in 2018. Cordoba alleged the City's actions "frustrated the agreed-upon common purpose" of the contracts and "rendered Cordoba's performance impossible." It did not specify its damages.

Finally, Cordoba asked for declaratory relief regarding its obligations under its various contracts with the City operable between 2015 and 2018.

The City filed a special motion to strike Cordoba's cross-complaint under section 425.16, arguing Cordoba's claims arose from the City's protected activity—namely, its lawsuit against Cordoba.

The trial court held a hearing on the motion. Cordoba characterized the lawsuit as a dispute over fees initiated well beyond the 30-day deadline and argued the court should deny the special motion to strike. For the first time at the hearing, Cordoba analogized the City's duty under the contract to indemnity obligations. It said "the gravamen of this dispute is Cordoba's invoices."

The trial court disagreed with Cordoba's indemnity analogy and said, "[R]eally the gravamen of the case is Cordoba complaining that, hey, we've been sued by the City of Industry. And the only reason why we have been sued is that the City

5

failed to comply with its contractual obligations and, accordingly, we want to recover the costs of defending against this case . . . ." The court reasoned Cordoba's points might be a defense to the City's lawsuit, but found "the only alleged harm was the bringing of the lawsuit, and that would be privileged." The court granted the special motion to strike the cross-complaint under section 425.16. Cordoba appealed.

## II

We independently review rulings on special motions to strike. (*Woodhill Ventures, LLC v. Yang* (2021) 68 Cal.App.5th 624, 630 (*Woodhill*).) First we determine whether the claims arose from protected activity, and, if so, we test whether the plaintiff has shown a probability of success on its claims. (*Id.* at p. 631.)

The trial court was right to grant the City's motion. On the first step, Cordoba's cross-complaint sought to curb the City's protected right to petition. (§ 425.16, subd. (b)(1).) On the second, it did not demonstrate a probability of success on its claims because each of its three causes of action failed to state a case. We address each step in turn.

## A

Activity protected by section 425.16 includes "any written or oral statement or writing made before a legislative, executive, or judicial proceeding." (§ 425.16, subd. (e)(1).) This right of petition encompasses the act of filing a lawsuit. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 90 (*Navellier*).)

When a party pleads a cause of action that rests on allegations of multiple acts, a court must analyze each action to determine whether it is protected. (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009–1012.) Courts may consider

6

the "gravamen" of claims to determine whether particular acts are elements, as opposed to incidental background, but not to determine the essence of a mixed cause of action. (*Id*. at p. 1012.)

Cordoba does not deny filing a lawsuit is protected activity. Instead, it argues its three causes of action arise not from the City's petitioning activity, but from the City's noncompliance with its contractual obligations. As will become clear, this is a distinction without a difference.

1

The court properly struck Cordoba's breach of contract claim because the conduct Cordoba attacked was protected petitioning activity. Cordoba argues the City is precluded from raising any issue related to the invoices 30 days after receipt, so the City's years-delayed allegations of fraud violates the contract. This complaint plainly arises from the City's lawsuit. Put another way, but for the City's lawsuit, Cordoba's claim of breach would have no basis. (See *Navellier*, *supra*, 29 Cal.4th at p. 90.)

Cordoba says the lawsuit is "merely evidence" of the City's breach and characterizes its cross-complaint as attacking "the City's untimely attempt to collect." But it does not clarify what the City attempts to collect and why. Cordoba points to no other, unprotected acts seeking compensation besides the City's lawsuit. Cordoba also admitted to the trial court "[t]here was no reason to" sue for breach until the City filed suit. The only discernible City action against Cordoba was in court.

Cordoba relies on *City of Cotati v. Cashman* (2002) 24 Cal.4th 69 to argue that although the City's lawsuit "triggered" its cross-complaint, that does not mean it arose from the lawsuit. In *City of Cotati*, the underlying controversy was not a contract but a city's rent stabilization ordinance. Housing owners

7

challenged the ordinance as an unconstitutional taking in federal court. Then the city filed a state court action against the residents asking for a declaration the ordinance was, in fact, constitutional. The Supreme Court held the city's lawsuit targeted not the owners' federal action, but the underlying controversy between them over whether the ordinance was constitutional. The city's lawsuit thus did not arise from the owners' lawsuit because the controversy underlying both actions was independent—that is, while the owners' lawsuit alerted the city to the underlying controversy, the city's claim was not based on the owners' act of filing suit. (*Id*. at pp. 72–73, 79–80.)

Cordoba also cites *City of Alhambra v. D'Ausilio* (2011) 193 Cal.App.4th 1301. There a former employee joined a union demonstration after he reached a settlement agreement on a civil rights claim. The express terms of that agreement forbade demonstrating or advocating against the city. The city sought declaratory relief against the former employee, and he filed a special motion to strike. The Court of Appeal held that while the former employee's actions were protected speech, the city's action to settle the controversy did not arise from protected activity within the meaning of section 425.16. Rather, it arose from a still-binding settlement agreement whose scope and enforceability the city sought to clarify. (*City of Alhambra*. at pp. 1307–1309.)

Unlike *City of Cotati*, Cordoba's complaint does not target an underlying controversy that exists apart from the City's litigation. There is no other dispute between them. And unlike the settlement agreement in *City of Alhambra*, the contracts between the City and Cordoba have been terminated, are no longer binding, and never explicitly forbade the protected activity

8

of taking action in court. Other cases Cordoba cites are also inapposite. (E.g., *Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067–1068 [denial of tenure not protected]; *Oakland Bulk and Oversized Terminal, LLC v. City of Oakland* (2020) 54 Cal.App.5th 738, 755–756 [city refusing to issue permits, withholding contractual benefits, and stonewalling not protected].)

The City's lawsuit was in furtherance of its protected right to petition. The trial court correctly ruled the gravamen of Cordoba's breach of contract claim was to challenge precisely this activity.

2

Cordoba's second cause of action for breach of the implied covenant of good faith and fair dealing meets the same fate as the first, because Cordoba again targeted actions protected under section 425.16.

Cordoba says it gave notice of resignation in 2018 in part because the City had created uncertainty about its future through disputes with the Developer about the Tres Hermanos project. It does not allege the City's conduct in investigating the project specifically is the basis for its claim, but mere "evidence of the City creating an unsustainable relationship." This frustrated the purpose of the contracts, Cordoba says, forcing it to resign and thereby depriving it of the benefits of the contracts.

These disputes with the Developer were investigations of suspicious claims on public funds and a precursor to filing suit, first against the Developer and later against Cordoba. Communications in preparation for litigation are protected under section 425.16. (*Dove Audio, Inc. v. Rosenfeld, Meyer & Sussman* (1996) 47 Cal.App.4th 777, 784.)

9

Cordoba gives a second reason for its decision to give notice in 2017: the city council was considering firing its city manager, which allegedly contributed to the volatile situation. But this act, too, was protected—as communications undertaken in connection with a legislative proceeding. (See § 425.16, subd. (e)(1) & (2); see also *City of Montebello v. Vasquez* (2016) 1 Cal.5th 409, 425, fn. 13.)

Cordoba also asserts, for the first time, that the City interfered with its contractual rights by conniving with the Developer to obstruct Cordoba's attempts to perform an audit. We generally will not consider an argument or theory raised for the first time on appeal, and decline to do so here. (See *In re Estate of Westerman* (1968) 68 Cal.2d 267, 278–279 ["a party may not, for the first time on appeal, change the theory of a cause of action"].) This is not, as Cordoba describes, "simply another way of characterizing the facts." We decline to consider these new facts that Cordoba presents without citation to the record.

3

In its final cause of action, Cordoba asked the trial court for a declaration addressing its duties related to the contracts with the City and to the lease between the City and the Developer. Specifically, it asked the court to declare it was not responsible for approving the Developer's invoices. Cordoba said this controversy is substantial and immediate.

But Cordoba has *no* present or future duties under the contracts, which it chose to terminate in 2018. The only use of a declaration now would be to undermine the City's legal claims. In other words, but for the City's litigation, any question about rights and duties under the contracts is moot. Because there is no underlying controversy other than the City's lawsuit, this

10

claim, too, arises from protected litigation activity.  (See *Navellier, supra,* 29 Cal.4th at p. 90.)

B

We move to the second prong of the special motion to strike analysis, in which the movant carries the burden of establishing a probability of success in its claims.  (§ 425.16, subd. (b)(1); *Woodhill, supra,* 68 Cal.App.5th at p. 630.)  Cordoba must demonstrate its complaint is legally sufficient and supported by a prima facie showing of facts to sustain a favorable judgment if all its evidence is credited.  (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821.)

Cordoba cannot satisfy this burden, because each of its three causes of action fails to state a valid claim.  We explain.

1

First, Cordoba asserts the City breached the Agreement by challenging Cordoba's invoices after the deadline specified in the contract.  Cordoba's case rests on this 30-day notice provision.  It argues the City is fully barred from challenging Cordoba's allegedly fraudulent conduct in court more than 30 days after it received the bills.  By agreeing to this provision, Cordoba says, the City waived its right to challenge those invoices in 2020, under the Act or presumably anything else.

To interpret this 30-day provision, we examine the text of the contract.  (See *Foxcroft Productions, Inc. v. Universal City Studios, LLC* (2022) 76 Cal.App.5th 1119, 1130.)  The provision appears under the heading "PAYMENT" and states, with our emphasis:

"[Cordoba] shall submit invoices monthly for actual services performed.  Invoices shall be submitted on or about the first business day of each month, or as soon thereafter as practical, for

11

services provided in the previous month.  Payment shall be made within thirty (30) days of receipt of each invoice as to all non-disputed fees.  *If the City disputes any of [Cordoba's] fees it shall give written notice to [Cordoba] within thirty (30) days of receipt of an invoice of any disputed fees set forth on the invoice.*  Any final payment under this Agreement shall be made within 45 days of receipt of an invoice therefore."

In its operative cross-complaint, Cordoba wrote a "clerical or administrative error" is "exactly the type of oversight the 30-day notice requirement in the [Agreement] was meant to address."

The Act prescribes its statute of limitations:  six years from the date of the fraud, or three years from the date the city or county discovers the fraud, but no more than 10 years after the fraud, whichever occurs last.  (Gov. Code, § 12654, subd. (a).)  We note the Act affirmatively requires a city or county to investigate if it suspects false claims involving its funds.  (Gov. Code, § 12652, subd. (b)(1); *Stacy & Witbeck, Inc. v. City and County of San Francisco* (1996) 47 Cal.App.4th 1, 7.)  A city or county generally has discretion to file suit on the basis of its investigation.

Parties may contract a shorter limitation period, as long as that limitation is reasonable.  (See *Charnay v. Cobert* (2006) 145 Cal.App.4th 170, 183 (*Charnay*).)  "Reasonable" means the shortened period provides sufficient time to pursue a judicial remedy, does not violate public policy, and does not show undue advantage.  (*Moreno v. Sanchez* (2003) 106 Cal.App.4th 1415, 1430.)

On its face, this provision addresses payment of invoices, not legal action.  Interpreting the provision to require the City to

discover and to file a lawsuit for fraud under the Act within 30 days would be unreasonable. (Cf. *Charnay*, *supra*, 145 Cal.App.4th at p. 183 [10-day notice requirement for client to assert breach against her attorney "inherently unreasonable"].) This is insufficient time to pursue a judicial remedy. The intentional fraud the City now alleges under the Act was not an error contemplated by the notice provision and likely to be discovered by routine perusal of invoices. The main clues to fraud—Cordoba's substantial monthly payments to Frank Hill, whose company in turn had a 50 percent interest in the Developer—were absent from the invoices and unearthed only during discovery in 2020. The City alleges that Cordoba intentionally concealed this information, not that a clerical error obscured it. Cordoba has not demonstrated a probability of prevailing on its contract claim on this basis.

2

We turn to Cordoba's second cause of action. Implied in every contract is a covenant of good faith and fair dealing. The implied covenant prevents one side from unfairly frustrating the other's right to receive the benefits of the agreement actually made. (*Guz v. Bechtel Nat. Inc.* (2000) 24 Cal.4th 317, 349–350; 1 Witkin, Summary of Cal. Law (2022) Contracts, § 822.) The covenant does not impose substantive terms beyond those of the contract. (*Guz*, at pp. 349–350.) A plaintiff claiming breach must allege the defendant's wrongful conduct was contrary to the contract's purpose and the parties' legitimate expectations. (*Avidity Partners, LLC v. State of California* (2013) 221 Cal.App.4th 1180, 1204.)

Cordoba fails to ground the City's supposed wrongdoing in the terms of the contract. It says the City interfered with an

13

audit but does not specify how and why this vague conduct was contrary to the contract's purpose. It says it was forced to end its relationship with the City because of the City's "disputes" with the Developer and firing its city manager, but it does not explain what legitimate expectation it had that the City would behave otherwise.

Fundamentally, Cordoba complains the City deprived it of the benefits of its contracts with the City but does not say what benefit it unfairly lost. Cordoba has not stated a case for breach of the implied covenant.

3

Cordoba's third cause of action is for declaratory relief. The grant or denial of declaratory relief is within the discretion of the trial court. (§ 1061 [court may refuse declaration when "not necessary or proper at the time under all the circumstances"].) A complaint must show a proper subject for declaratory relief and an actual controversy involving justiciable questions relating to the rights or obligations of a party. (5 Witkin, Cal. Procedure (6th ed. 2022) Pleading, § 849.) Declaratory relief operates prospectively—a remedy "to be used in the interests of preventative justice, to declare rights rather than execute them." (*Babb v. Superior Court* (1971) 3 Cal.3d 841, 848 (*Babb*).)

A proper subject includes a declaration of one's rights and duties under a contract. (§ 1060.) A controversy is ripe when it has reached, but has not passed, the point that the facts sufficiently have congealed to permit the court to issue a useful decision. (*Gafcon, Inc. v. Ponsor & Associates* (2002) 98 Cal.App.4th 1388, 1403.) The purpose of the declaration is to allow the parties to shape their conduct to avoid a breach. (*Babb*,

14

*supra*, 3 Cal.3d at p. 848.) There is no basis for declaratory relief where only past wrongs are involved. (*Osseous Technologies of America, Inc. v. DiscoveryOrtho Partners LLC* (2010) 191 Cal.App.4th 357, 366.)

In its complaint, Cordoba asks the trial court to declare that the contracts did not require it to approve the Developer's invoices. It says this is a "substantial controversy of sufficient immediacy" to warrant declaratory judgment in order to "obviate litigation." Yet the only immediate controversy alleged is present litigation against Cordoba on the basis of past acts; i.e., its duties under the contracts that ended in early 2018. The facts congealed years ago, and the controversy is stale. No declaration from the trial court could help the parties prevent a future breach. Rather, Cordoba seeks a declaration that it is innocent of the alleged fraud. Such a declaration would be of no use except as a defense against the allegations. And without an actual controversy concerning present rights and duties, section 1060 does not authorize a declaration.

We may affirm a correct ruling even if the trial court supplied different reasons. (Cf. *Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 980–981 [trial court's grant of a motion to set aside default correct although its stated legal basis was faulty].) While the trial court held the litigation privilege barred the action, it was also well within its discretion to dismiss the request for declaration relief under these circumstances. (§ 1061.)

The trial court was right to grant the special motion to strike Cordoba's cross-complaint, but Cordoba is not entirely without recourse. As the trial court noted, many of Cordoba's

15

arguments in its cross-complaint more properly may be made as defenses.

## DISPOSITION

We affirm the order and award costs to the City. We deny Cordoba's requested judicial notice as irrelevant.


WILEY, J.


We concur:



STRATTON, P. J.



HARUTUNIAN, J.*

---

*	Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.