Filed 9/20/23  Arif Khan Global v. State Bank of India CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ARIF KHAN GLOBAL, INC., | B311534 |
| Plaintiff and Appellant, | |
| v. | (Los Angeles County Super. Ct. No. 19STCV06024) |
| STATE BANK OF INDIA, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Monica Bachner, Judge.  Affirmed.

Law Office of Robert M. Silverman and Robert M. Silverman, for Plaintiff and Appellant.

Squire Patton Boggs, Scott W. Coyle, Helen H. Yang, Chassica Soo, and Shaun Kim, for Defendant and Respondent.

————————————————————

Plaintiff Arif Khan Global, Inc. (Akgus) appeals from a trial court order sustaining a demurrer to its complaint against defendant State Bank of India (State Bank).  Akgus asked State Bank to assist it with a large-scale international sugar transaction involving a letter of credit as the method of payment.  The operative complaint alleges Akgus entered a written contract with State Bank to facilitate the letter of credit transaction and that State Bank breached the contract by withdrawing its participation.  The complaint further alleges State Bank made false representations in connection with the contract negotiations.  The complaint asserts claims for breach of contract, promissory estoppel, fraud, and negligent misrepresentation.  State Bank demurred, arguing Akgus did not state a claim as to any of the four counts against State Bank.  The trial court agreed.  We affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

We take the relevant facts from the operative third amended complaint and attached exhibits.  (*Rufini v. CitiMortgage, Inc.* (2014) 227 Cal.App.4th 299, 302; *Hill v. Roll Internat. Corp.* (2011) 195 Cal.App.4th 1295, 1300.)

***The Sugar Contract and Letter of Credit Transaction***

Akgus is a re-seller that facilitates international commodities sales.  Akgus executed a contract in April 2017 (the Sugar Contract) to supply hundreds of thousands of tons of sugar to Dubai-based White Rays Food Stuff LLC (White Rays).  Akgus subsequently contracted to purchase sugar from a supplier in Brazil.  State Bank was not a party to either of these contracts.  It became involved in the transaction later and, the complaint alleges, entered a separate written contract with Akgus.

2

The Sugar Contract required White Rays and its bank, India Overseas Bank (India Overseas), to prepare a documentary letter of credit (the Letter of Credit). A letter of credit is a document used to facilitate payment in international transactions. It is prepared by a buyer's bank and guarantees that the buyer will pay the "beneficiary" of the letter of credit (that is, the seller) on time and in the proper amount. The letter of credit also sets forth logistical details for the transaction. (1 McCullough, Letters of Credit (1st ed. 2023) The Nature of a Letter of Credit, § 4.02[1][a]; see also *Paramount Export Co. v. Asia Trust Bank, Ltd.* (1987) 193 Cal.App.3d 1474, 1480; *Dibrell Bros. International S.A. v. Banca Nazionale Del Lavoro* (11th Cir. 1994) 38 F.3d 1571, 1578–1579 (*Dibrell*).)

According to the complaint, a typical letter of credit transaction proceeds as follows. The buyer's bank acts as the "issuing" bank, meaning it prepares and sends the letter of credit to the seller's bank. The seller's bank serves as the "receiving" and "advising" bank, meaning it will receive the letter of credit and advise the seller.[1] After receiving the letter of credit, the supplier ships the goods and submits an onboard bill of lading (a document from the shipper acknowledging receipt of goods) to the seller. The seller then submits an invoice, certificate of origin, and packing list, as specified in the letter of credit, to its bank. The seller's bank verifies these documents, as specified in the letter of credit, and submits them to the buyer's bank. The

---

[1] An advising bank is responsible for informing the beneficiary that the letter of credit has been issued. (Cal. U. Com. Code, § 5102.) An advising bank must also "satisfy itself as to the apparent authenticity of the credit . . . ." (1 McCullough, Letters of Credit (1st ed. 2023) Advising Bank, § 3.02[7][c][ii][B].)

buyer's bank then pays the seller's bank, and in turn, the seller's bank pays the supplier. Although the complaint describes the transaction generally as involving a "buyer" and "seller," Akgus intended to act as an intermediary and re-seller, with its bank acting as the "seller's bank" with respect to the letter of credit.

The Sugar Contract required the Letter of Credit to be "confirmed" by a bank. Confirmation is an optional step that provides an additional level of security: the confirming bank would guarantee payment to Akgus and the sugar supplier, up to a designated "exposure limit," if India Overseas failed to pay. (See Cal. U. Com. Code, § 5107, subd. (a) ["A confirmer is directly obligated on a letter of credit and has the rights and obligations of an issuer to the extent of its confirmation"]; see also *Dibrell*, *supra*, 38 F.3d at pp. 1579–1580.) Akgus's first sugar supplier wanted an American bank to confirm the Letter of Credit. Akgus, White Rays, and the sugar supplier initially agreed to use Wells Fargo.

Akgus first contacted non-party State Bank of India (California) (State Bank California) "for the purpose of processing" the Letter of Credit. Akgus described the proposed transaction as follows:

> "To summarize we are re-selling Sugar with no risk to us and our bank. Our buyer makes funds available and issues transferable [Letter of Credit] to us. Then our bank transfers the same [Letter of Credit] to our seller. [¶] After the goods are loaded our seller submits documents as per the contract to our bank (SBI) for payment. SBI replaces our seller's invoice with our invoice and submits to our buyers [*sic*] bank in Singapore. Singapore banks [*sic*] pays our bank SBI for this transaction. SBI, keeps our share of profit and pays our seller as per the

4

transferred [Letter of Credit] only after receiving funds from Singapore bank. This is repeated for the full contract."

State Bank California referred Akgus to its subsidiary, State Bank.

The complaint alleges State Bank told Akgus that it could confirm the Letter of Credit and asked Akgus to "convince" the sugar supplier to use State Bank for this purpose. State Bank told Akgus that it had exposure limits and a Relationship Management Application (RMA) with India Overseas. This RMA meant State Bank could interface directly with India Overseas without the need to involve an intermediary bank to facilitate the transaction. In addition, State Bank told Akgus that Wells Fargo may require additional restrictions that could delay the transaction.

The first sugar supplier refused to agree to have State Bank act as the confirming bank, but it later withdrew from the transaction. Akgus procured a second sugar supplier: CMA Trading (CMA). According to the complaint, White Rays and CMA "agreed to have [State Bank] process the entire [Letter of Credit] transaction—receiving/advising bank, confirming bank, transferring bank and provide payment." State Bank would thus "earn a tremendous amount of money from taking advantage of currency exchange rates, transfer fees and confirmation fees."

The complaint alleges that Akgus and State Bank entered into an express written contract under which State Bank agreed to "receive the [Letter of Credit], add its confirmation to the [Letter of Credit], and transfer the [Letter of Credit]" to CMA. Pursuant to "custom and practice," the contract was based on "email, texts, documentation and telephone calls among the parties." The complaint attaches several documents purporting

5

to reflect Akgus's and State Bank's correspondence that constituted the contract:[2]

*Attachment A.* On May 8, 2017, Akgus contacted State Bank California by e-mail to request assistance with the Letter of Credit. State Bank California stated on May 10 that it was "looking into it."

*Attachment B.* On May 22, Akgus provided State Bank with a draft of the Letter of Credit. State Bank responded on May 24 and requested several revisions. On May 30, Akgus informed State Bank that its first sugar supplier requested that the Letter of Credit be transferred to the supplier's bank as part of the transaction. Akgus also provided State Bank with a list of revisions to the Letter of Credit that it intended to request from White Rays. State Bank indicated on June 1 that the revisions "seem Ok." Later that day, Akgus forwarded State Bank's e-mail to K. Ramaswamy (Ram), Akgus's financial advisor, and asserted that State Bank "will issue the certificate that the documents are as per the [Letter of Credit] after checking for discrepancies."

*Attachments C and D.* Akgus sent Ram a draft of the Letter of Credit on June 8. This draft of the Letter of Credit lists Wells Fargo as the confirming bank.

Ram sent a draft of the Letter of Credit to White Rays on June 8 and informed White Rays that the draft had been "approved by our Bank." The draft that Ram sent was not itself attached to the complaint.

Ram sent an e-mail to Akgus on June 9 with the subject "Mail to the Buyer WhiteRays." The message addressed

---

[2] These communications were exchanged between representatives for the parties, but in the interest of clarity, we refer to the parties rather than the individuals.

6

Nathaniji, a WhiteRays representative. Ram indicated State Bank informed him that it had an RMA with India Overseas and that State Bank "can add their confirmation if it is acceptable to the Refinery in Brazil." State Bank told Ram that Wells Fargo would "add a few clauses and there will be delay when documents go through different Banks." The e-mail continued:

> "I told [the Chief of State Bank] that the Refinery is comfortable with Welsfargo [*sic*] which is one of the TOP 10 Banks in the World where as [State Bank] ranks at 62. [¶] However I am talking to the Refinery about [State Bank] and trying to persuade them to accept the [State Bank] confirmation. I am Awaiting their final approval. [¶] If they agree we can ask [India Overseas] to advise the [Letter of Credit] directly to [State Bank] who will be advising to us and also confirm the [Letter of Credit]. So [Letter of Credit] Advising Bank, Our Bank, [Letter of Credit] Confirming Bank are one which is [State Bank]. This is subject to the Brazil Refinery accepting [State Bank]."

On June 9, Akgus told State Bank that it had convinced its first sugar supplier to accept State Bank as the confirming bank. However, Akgus continued, "The supplier has accepted [State Bank] confirmation instead of Wells Fargo on the condition that [State Bank] provide some kind of assurance that after receiving and verifying the documents, [State Bank] will pay immediately/fast. Please let us know what can be done."

On June 10, Akgus sent Ram a document described as "Final Comments to [Letter of Credit] Draft with [State Bank], Los Angeles Agency, USA confirmation." This draft of the Letter of Credit lists State Bank as the confirming bank.

7

On June 13, State Bank responded to Akgus's June 9 e-mail, but did not acknowledge Akgus's request regarding the timing of payment. Instead, State Bank provided Akgus with a blank form titled "Application for Transfer of Letter of Credit." This application would allow Akgus to request that State Bank transfer the Letter of Credit "to the Second Beneficiary" (i.e., the sugar supplier). The application required Akgus to specify logistical details about the transfer and agree to several terms and conditions. The same e-mail and attachment appear to be the content of Attachment D.

*Attachment E.* On June 22, Akgus told State Bank that it was finalizing an agreement with replacement sugar supplier CMA. Akgus asked State Bank to confirm that it could transfer the Letter of Credit to CMA's bank. State Bank responded that it was "ok with the arrangement and can transfer the [Letter of Credit] to your supplier's Bank."

*Attachment F.* On June 26, Akgus e-mailed state Bank, writing: "Our supplier is considering getting the [Letter of Credit] transferred within [State Bank]. He banks with Chase Bank." Akgus asked State Bank to confirm or explain that CMA would not need to open an account with State Bank. State Bank responded:

> "There is no need of opening an account with us. We will be sending the SWIFT message to your supplier's bank that the referenced [Letter of Credit] is transferred in the Supplier's name by you and that we would remit the amount to the his [*sic*] bank account (with any US Bank) as per the terms of Transfer.
>
> "We will keep the original [Letter of Credit] with us and the supplier can submit the documents directly to us.

8

"We will credit his account on receipt of payment from the [Letter of Credit] opening bank."

*Attachment G.* Akgus contacted State Bank again on June 28 to convey that CMA was "concerned about getting paid under the [Letter of Credit] . . . ." Akgus asked State Bank to "[p]lease confirm the following":

> "1) The [Letter of Credit] will be issued to us Arif Khan Global Inc from [India Overseas], Hong Kong and will come to State Bank of India, Los Angeles.
> "2) This [Letter of Credit] will be confirmed by State Bank of India, Los Angeles.
> "3) State Bank of India, will transfer this [Letter of Credit] to our supplier, CMA internally in State Bank of India, Los Angeles and will send swift message to CMA Bank which is CHASE for this [Letter of Credit] transfer in CMA name.
> "4) CMA submits all documents as per [Letter of Credit] directly to State Bank of India, Los Angeles.
> "5) State Bank of India, Los Angeles negotiate[s] the [Letter of Credit] and transfers cash to CMA account in Chase Bank.
> "GUARANTEE OF [LETTER OF CREDIT] PAYMENT—
> "Since State Bank of India, Los Angeles is confirming the [Letter of Credit], STATE BANK Guarantees payment against the [Letter of Credit] to CMA (Supplier) and Arif Khan Global both after the documents are submitted as per the [Letter of Credit] and Uniform Customs. State Bank of India, Los Angeles operates in USA as per FDIC guidelines and abide by them."

9

State Bank responded to Akgus on June 28 and stated:

> "If the documents are as per the [Letter of Credit] we will certify them and send to the opening Bank.  Once we receive the payment from the opening Bank, the same will be remitted to your supplier as per terms of the Transfer of [Letter of Credit].
>
> "State Bank of India is the largest Bank in India and one of the Fortune 500 companies.  The Los Angeles Agency of SBI is in existence in USA since the last 35 years and we have a successful track record for all our Trade Finance customers.
>
> "If the documents submitted are as per [Letter of Credit] then you should be sure of getting the payment."

According to the complaint, the Letter of Credit "was to be sent to [State Bank] in the early part of July 2017" and CMA required the Letter of Credit to be transferred to it by July 15, 2017.

*Attachment H*.  State Bank contacted Akgus by text message on July 7 and instructed it to "hold the [Letter of Credit].  [S]ome clarifications required to be sorted out."  Later that day, State Bank informed Akgus that it "will not be able to confirm the [Letter of Credit]."

The complaint alleges it was "impossible" for Akgus to find another bank to replace State Bank in time to complete the transaction.  Akgus canceled the transaction altogether.  Akgus also lost the opportunity to facilitate a second transaction that was predicated on Akgus's ability to demonstrate that it had conducted a large-scale sugar transaction in the past.

10

### The Lawsuit

Akgus filed its original complaint in February 2019 asserting six causes of action: (1) breach of contract, (2) promissory estoppel, (3) fraudulent inducement, (4) negligent misrepresentation, (5) breach of guaranty, and (6) breach of implied in fact contract.  The complaint named State Bank California as a defendant.  In March 2019, Akgus filed a first amended complaint replacing State Bank California with State Bank.[3]  State Bank demurred to the first amended complaint in May 2019.

In November 2019, the trial court sustained the demurrer to the breach of contract claim, concluding the complaint did not adequately allege the terms of any written contract.  However, the court noted Akgus asserted it could establish the existence of a binding written agreement by attaching relevant written contracts and communications, thus the court granted leave to amend.  The court also sustained the demurrer to the promissory estoppel claim with leave to amend on the basis that the complaint did not allege facts supporting its general allegations that State Bank intended to induce reliance and that Akgus's reliance was reasonable.  The court overruled the demurrer to the fraudulent inducement and negligent misrepresentation causes of action, noting the demurrer argued Akgus failed to allege where the misrepresentations took place, but did not also address whether Akgus sufficiently alleged all of the requisite elements of those claims.  Akgus agreed to remove the breach of guaranty and breach of implied in fact contract causes of action, and the

---

[3]     The operative complaint also names two individual defendants who are not parties to this appeal.

11

court sustained the demurrer to those counts without leave to amend.[4]

In December 2019, Akgus filed a second amended complaint. The complaint asserted claims for (1) breach of contract, (2) promissory estoppel, (3) fraudulent inducement, and (4) negligent misrepresentation. The complaint also attached nine documents. State Bank demurred to the second amended complaint in January 2020, and in July 2020, the trial court sustained the demurrer with leave to amend.

Akgus filed a third amended complaint in July 2020 and a corrected third amended complaint in January 2021. The complaint asserted the same four causes of action as the second amended complaint. It also attached the same nine documents that were attached to the second amended complaint and added additional pages to Attachments A, B, C, and D.

State Bank successfully demurred to the third amended complaint. As to the breach of contract claim, the trial court found that the attachments contradicted some of the allegations in the complaint, did not establish that any contract was entered, and did not reflect the terms of any contract. With respect to the promissory estoppel claim, the trial court found the complaint did not allege State Bank made a clear promise to perform or that Akgus reasonably relied on any promise. And as to the fraud and negligent misrepresentation claims, the trial court found the complaint did not adequately allege a material misrepresentation or scienter. The trial court sustained the demurrer without leave

---

[4]    State Bank demurred to the implied contract claim based in part on the statute of frauds, which requires that contracts to extend credit in an amount greater than $100,000 must be in writing. (Civ. Code, § 1624, subd. (a)(7).)

12

to amend and entered judgment in favor of State Bank.[5]  Akgus timely appealed.

## DISCUSSION

### I.     Standard of Review

" 'On review from an order sustaining a demurrer, "we examine the complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory, such facts being assumed true for this purpose." ' " (*Tucker v. Pacific Bell Mobile Services* (2012) 208 Cal.App.4th 201, 210 (*Tucker*).)  "The court does not, however, assume the truth of contentions, deductions or conclusions of law." (*Aubry v. Tri-City Hospital* Dist. (1992) 2 Cal.4th 962, 967.)  "Exhibits attached to the complaint take precedence to the extent they contradict allegations in the complaint." (*Bank of New York Mellon v. Citibank, N.A.* (2017) 8 Cal.App.5th 935, 943 (*Bank of New York*).)

"If a demurrer is sustained, we exercise our independent judgment on whether a cause of action has been stated as a matter of law, regardless of reasons stated by the trial court.  [Citation.]  We affirm if the trial court's decision was correct on any theory.  [Citation.]" (*Tucker*, *supra*, 208 Cal.App.4th at pp. 210–211.)

---

[5]     State Bank also moved to strike the punitive damages claim in the complaint and the trial court denied the motion as moot in light of its decision to sustain the demurrer.  On appeal, Akgus argues State Bank's motion to strike was groundless and should have been denied.  Because we affirm, we similarly conclude the motion to strike is moot.

13

## II. The Complaint Does Not Allege Facts Demonstrating That the Parties Formed a Written Contract

Akgus argues the trial court erroneously concluded that the complaint and attached documents did not allege the existence and breach of a written contract. We disagree.

### A. Legal principles

"A cause of action for damages for breach of contract is comprised of the following elements: (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." (*Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1388.)

"The terms of an express contract are stated in words." (*Retired Employees Assn. of Orange County, Inc. v. County of Orange* (2011) 52 Cal.4th 1171, 1178, citing Civ. Code, § 1620.) A contract may be " 'pleaded either by its terms—set out verbatim in the complaint or a copy of the contract attached to the complaint and incorporated therein by reference—or by its legal effect.' [Citation.]" (*Heritage Pacific Financial, LLC v. Monroy* (2013) 215 Cal.App.4th 972, 993.) A written contract may be reflected in a series of related documents, such as back-and-forth e-mails. (*J.B.B. Investment Partners Ltd. v. Fair* (2019) 37 Cal.App.5th 1, 11.)

" 'Under California law, a contract will be enforced if it is sufficiently definite (and this is a question of law) for the court to ascertain the parties' obligations and to determine whether those obligations have been performed or breached.' [Citation.]" (*Bustamante v. Intuit, Inc.* (2006) 141 Cal.App.4th 199, 209 (*Bustamante*).) " 'Where a contract is so uncertain and indefinite that the intention of the parties in material particulars cannot be

14

ascertained, the contract is void and unenforceable.' [Citations.]" (*Ibid*.) " '[T]erms proposed in an offer must be met exactly, precisely and unequivocally for its acceptance to result in the formation of a binding contract; and a qualified acceptance amounts to a new proposal or counteroffer . . . .' " (*Panagotacos v. Bank of America* (1998) 60 Cal.App.4th 851, 855–856 (*Panagotacos*).)

"Preliminary negotiations or an agreement for future negotiations are not the functional equivalent of a valid, subsisting agreement." (*Kruse v. Bank of America* (1988) 202 Cal.App.3d 38, 59.) Likewise, " '[t]he law does not provide a remedy for breach of an agreement to agree in the future.' " (*Alaimo v. Tsunoda* (1963) 215 Cal.App.2d 94, 99.) " '[I]f an essential element is reserved for the future agreement of both parties, the promise can give rise to no legal obligation until such future agreement.' " (*Ablett v. Clauson* (1954) 43 Cal.2d 280, 284–285,quoting 1 Williston, Contracts, (rev. ed. 1936) 131, § 45.)

## B. The alleged written contract is uncertain and indefinite

The complaint alleges State Bank breached an express written contract under which it "unconditionally committed" to "receive the [Letter of Credit], add its confirmation to the [Letter of Credit], and transfer the [Letter of Credit]" to CMA's bank. Akgus alleges Attachments A through G to the complaint reflect the written contract. However, the writings exchanged between the parties demonstrate that State Bank did not agree to the specific terms proposed by Akgus—and in particular, it did not agree to confirm the Letter of Credit.

Specifically, the complaint alleges that on "June 1, 8, 22, and 28, 2017, [State Bank] committed to proceed and process the

15

[Letter of Credit]," and that on "May 30, 31, June 1, 8, 22, 26 and June 28, 2017," State Bank "agreed to enter into this transaction and committed to proceed with performing all obligations under the [Letter of Credit] transaction." The allegations are contradicted for each specified date.

Neither the complaint nor the attached exhibits refer to or reflect any communications from State Bank to Akgus on May 30 or May 31. State Bank's communication on June 1 was in response to *proposed* letter of credit language Akgus intended to request from White Rays. State Bank responded only: "Other details seem Ok however in field 57D you do not need to mention your Bank account number."

On June 8, Akgus sent Ram a draft letter of credit with Wells Fargo as the confirming bank, and Ram sent White Rays a draft letter of credit which is not attached to the exhibit. The complaint's attachments neither reflect any written correspondence from State Bank to Akgus on that day, nor reflect that State Bank received the communications Akgus sent to Ram, or that Ram sent to White Rays.

Ram's June 9 e-mail addressed to White Rays referenced a June 8 conversation with State Bank in which it said it could confirm the Letter of Credit if the Brazilian refinery agreed. Ram's report of the conversation did not reflect State Bank's contractual commitment or promise; in fact, Ram appeared to denigrate State Bank's participation to the bank's "chief," citing the bank's poor global rating. Further, Ram explicitly indicated State Bank's role as the confirming bank was contingent on the approval of the supplier, which Akgus did not yet have and never received because the first supplier refused to agree to State Bank's participation.

16

On June 22, Akgus asked State Bank to confirm that it could transfer the Letter of Credit "and can work with Chase when the documents are submitted as per the requirements of the [Letter of Credit]." State Bank responded it was "ok with the arrangement and can transfer the [Letter of Credit] to your suppliers Bank i.e. Chase Bank." State Bank was silent on confirming the Letter of Credit.

Akgus's next e-mail to State Bank on June 26 suggested the parties' negotiations were still ongoing, as it indicated the supplier was "considering getting the [Letter of Credit] transferred within State Bank," and asking for further explanation of details. State Bank responded with details about the logistics of a transfer. It did not commit to confirming the letter of credit.

Finally, on June 28, the negotiations culminated in Attachment G, Akgus's e-mail to State Bank. The complaint alleges this e-mail shows State Bank had "contractual commitments" to approve, transfer, and confirm the Letter of Credit. But this document also contradicts the complaint's allegations. (*Bank of New York*, *supra*, 8 Cal.App.5th at p. 943.) In Attachment G, Akgus asked State Bank to "confirm" five specific terms and approve one new guarantee. Akgus sought State Bank's written agreement that: "[T]his [Letter of Credit] will be confirmed by State Bank of India, Los Angeles;" and "[s]ince State Bank of India, Los Angeles is confirming the [Letter of Credit], STATE BANK Guarantees payment against the [Letter of Credit] to CMA (Supplier) and Arif Khan Global both after the documents are submitted as per the [Letter of Credit] and Uniform Customs."

17

State Bank did not agree.  Instead, it responded to Akgus's specific terms with generalities and ignored the proposed guarantee altogether.  State Bank described the transfer logistics and indicated only: "If the documents submitted are as per [Letter of Credit] then you should be sure of getting the payment."[6]  This did not reflect an unconditional agreement to guarantee payment or to separately confirm the Letter of Credit.

A party must accept "precisely and unequivocally for its acceptance to result in the formation of a binding contract." (*Panagotacos*, *supra*, 60 Cal.App.4th at pp. 855–856; Civ. Code, § 1585 ["acceptance must be absolute and unqualified"].)  State Bank did not do so here.  Instead, Attachment G shows that Akgus asked State Bank to accept five specific terms, including a promise to confirm the Letter of Credit, and commit to a new "guarantee of payment" to CMA and Akgus.  Akgus's request that State Bank "confirm" these terms only supports that they were unsettled—if State Bank had agreed to them previously, this confirmation would be unnecessary.  State Bank countered with a vague commitment as to some of the terms, ignored the express guarantee language (a term Akgus had indicated was essential because the supplier was concerned about getting paid), and did not agree to confirm the Letter of Credit.  The exchange establishes State Bank and Akgus did not "reach a meeting of the minds on all material points."  (*Banner Entertainment, Inc. v.*

---

[6]    State Bank stated it would "certify" certain documents relating to the Letter of Credit.  In the context of item 4 in Akgus's e-mail, these are documents that would eventually be submitted by sugar supplier CMA.  They are separate from the Letter of Credit itself, which was to be prepared by India Overseas.  State Bank's agreement to "certify" those documents is not a promise to confirm the Letter of Credit.

*Superior Court* (1998) 62 Cal.App.4th 348, 359.) This failure "prevents the formation of a contract even though the parties have orally agreed upon some of the terms, or have taken some action related to the contract." (*Ibid*., italics omitted.)

Likewise, "equivocal and nonconfirmatory responses do not 'show[ ]' " that parties " 'made a contract' or set forth the 'essential contract terms with reasonable certainty.' [Citation.]" (*Smyth v. Berman* (2019) 31 Cal.App.5th 183, 197.) Akgus alleges State Bank's agreement to confirm the letter of credit was an essential term of their contract, and that the attachments to the complaint reflect the parties' written agreement. Yet, the written exchanges demonstrate State Bank responded only equivocally, or not at all, regarding confirmation of the Letter of Credit.

Those same exchanges further reflect only conditional agreement to other proposed terms, as well as the uncertainty of State Bank's participation in the transaction. Although this was a time-sensitive transaction, the parties' written exchanges did not set forth any provisions regarding the timing of State Bank's performance, or reflect that it even responded to Akgus's request for a commitment to immediate or fast payment. While the complaint alleged State Bank stood to profit from the transaction, the parties' written exchanges included no term regarding State Bank's fees or other compensation. State Bank's participation was also conditioned upon the seller accepting its role, yet as late as June 26, Akgus represented the seller was only "considering" having the Letter of Credit transferred within State Bank. The complaint fails to show State Bank and Akgus entered into "sufficiently definite" promises to form an enforceable contract. (*Bustamante, supra*, 141 Cal.App.4th at p. 209.)

19

## III. The Complaint Does Not State a Claim for Promissory Estoppel

Akgus also argues the trial court erred in sustaining the demurrer as to its claim for promissory estoppel. We find no error.

### A. Legal principles

" 'The elements of a promissory estoppel claim are "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." [Citation].' [Citations.]" (*Advanced Choices, Inc. v. State Dept. of Health Services* (2010) 182 Cal.App.4th 1661, 1672.)

### B. The complaint does not allege Akgus reasonably relied on State Bank's representations

The complaint alleges State Bank promised it would receive, confirm, and transfer the Letter of Credit; verify certain documents "to be supplied by the seller after shipment;" and "rapidly" pay CMA and Akgus. For purposes of its promissory estoppel claim Akgus may rely on oral representations. (*Frebank Co. v. White* (1957) 152 Cal.App.2d 522, 523.) Thus, while the purported written contract fails to show unconditional and definite promises, the complaint alleges State Bank told Akgus on a conference call that it would "confirm and transfer" the Letter of Credit; that State Bank told Akgus it would "rapidly pay[ ]" CMA and Akgus; and that State Bank promised to "certify" certain documents that would be provided by CMA.

However, even accepting these allegations as true and concluding they were sufficiently clear promises for purposes of a promissory estoppel claim, the complaint fails to adequately

allege that Akgus reasonably relied on these promises. The complaint merely recites this element of promissory estoppel. It does not identify any factual allegations suggesting Akgus's reliance was reasonable. Rather, the complaint establishes Akgus's reliance was not reasonable because State Bank's written representations contradicted several aspects of the alleged oral promises.

*Murphy v. Twitter, Inc.* (2021) 60 Cal.App.5th 12 (*Murphy*) is instructive. In *Murphy,* the plaintiff was permanently suspended from Twitter after posting messages that violated the company's conduct rules. (*Id*. at p. 17.) The plaintiff claimed this violated a clear and unambiguous promise to not censor accounts, as reflected in Twitter's user agreement, on its website, and in its public statements. (*Id*. at p. 22.) The court concluded plaintiff's reliance on these promises was not reasonable because the promises were contradicted by other terms prohibiting certain conduct and reserving the right to suspend or terminate accounts for any reason. (*Id*. at pp. 38–39.)

Similarly, the promises on which Akgus alleged it relied are contradicted by State Bank's written correspondence. The attachments to the complaint show State Bank indicated it could transfer the Letter of Credit or certify documents, but it never agreed in writing to confirm the Letter of Credit despite Akgus's request. In describing what it was willing to do, State Bank stated it would "transfer" the Letter of Credit, and would take actions "per the [Letter of Credit]," but repeatedly failed to state it would add its confirmation to the Letter of Credit. State Bank was also silent in response to Akgus's written request for "immediate[ ]" payment. State Bank's failure to provide written confirmation of purported oral promises, even when Akgus

21

specifically sought such written verification, fatally undermines any allegation that Akgus's reliance was reasonable. (*Murphy*, *supra*, 60 Cal.App.5th at p. 39 [whether reliance was justified may be decided as a matter of law if reasonable minds can come to only one conclusion based on the facts].)

## IV.  Akgus Has Not Alleged Facts Sufficient to State Claims for Fraud or Negligent Misrepresentation

Finally, Akgus argues the trial court erred in sustaining State Bank's demurrer as to the claims for fraud and negligent misrepresentation. We find no error.

### A. Legal principles

The elements of fraud are " ' "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." ' [Citations.]" (*Charnay v. Cobert* (2006) 145 Cal.App.4th 170, 184 (*Charnay*).)

"The elements of negligent misrepresentation are similar to intentional fraud except for the requirement of scienter; in a claim for negligent misrepresentation, the plaintiff need not allege the defendant made an intentionally false statement, but simply one as to which he or she lacked any reasonable ground for believing the statement to be true." (*Charnay, supra,* 145 Cal.App.4th at p. 184.) "To be actionable, a negligent misrepresentation must ordinarily be as to past or existing material facts. '[P]redictions as to future events, or statements as to future action by some third party, are deemed opinions, and not actionable fraud.' [Citations]." (*Tarmann v. State Farm Mut. Auto. Ins. Co.* (1991) 2 Cal.App.4th 153, 158 (*Tarmann*).)

"Fraud and negligent misrepresentation must be pleaded with particularity and by facts that ' " 'show how, when, where, to

whom, and by what means the representations were tendered.' " ' [Citation.]" (*Charnay*, *supra*, 145 Cal.App.4th at p. 185, fn. 14.)

## B. Forward-looking statements are not actionable as fraud or negligent misrepresentation

The claims for fraud and negligent misrepresentation are based on State Bank's alleged representations that it would receive, confirm, and transfer the Letter of Credit. Specifically, Akgus alleges that on May 30, 2017, State Bank said in a conference call that it "would definitely" transfer the Letter of Credit, and that State Bank made a similar statement during a May 31 phone call with Akgus. On June 1, State Bank told Akgus by phone and by e-mail that it approved of and "would transfer" the Letter of Credit. State Bank told Akgus by phone on June 8 that it "will definitely" accept, process, and transfer the Letter of Credit; "will confirm" the Letter of Credit; and would transfer payment to CMA and Akgus. Finally, on July 5, State Bank told Akgus that it would tell Akgus as soon as it received the letter of Credit so that it could transfer the Letter of Credit and related payments. Each of these representations is fundamentally forward-looking and thus not actionable under theories of standard fraud or negligent misrepresentation. (*Tarmann*, *supra*, 2 Cal.App.4th at p. 158; *Stockton Mortgage, Inc. v. Tope* (2014) 233 Cal.App.4th 437, 458 [representation of future performance does not support claim for negligent misrepresentation].)

## C. The promissory fraud theory fails because the complaint does not adequately allege State Bank had no intention to perform

On appeal, Akgus argues the complaint's allegations state a claim for promissory fraud. "[I]n a promissory fraud action, to

23

sufficiently alleges [*sic*] defendant made a misrepresentation, the complaint must allege (1) the defendant made a representation of intent to perform some future action, i.e., the defendant made a promise, and (2) the defendant did not really have that intent at the time that the promise was made, i.e., the promise was false." (*Beckwith v. Dahl* (2012) 205 Cal.App.4th 1039, 1060.) "Each element must be alleged with particularity." (*Ibid*.)

The complaint alleges State Bank sent Akgus a letter on July 21, 2017, "admitt[ing]" that it "had no intention to go forward" with the transaction. But the complaint does not include any specific factual allegations about State Bank's intent when it made the alleged misrepresentations several weeks earlier. Because "plaintiff has alleged no facts or circumstances suggesting defendants' intent not to perform the alleged promise when it was made," these "are the very sort of general and conclusory allegations that are insufficient to state a fraud claim." (*Reeder v. Specialized Loan Servicing LLC* (2020) 52 Cal.App.5th 795, 804.)

### D. The complaint does not allege State Bank's representations regarding the RMA were false

The complaint also alleges that on June 8, 2017, State Bank fraudulently or negligently misrepresented that it had an RMA with India Overseas. But the complaint does not allege this representation was false, which is a required element under both causes of action. (*Charnay*, *supra*, 145 Cal.App.4th at p. 184.) The complaint therefore does not adequately plead fraud or negligent misrepresentation as to State Bank's representation about the RMA.

24

### E. The complaint does not adequately allege State Bank made knowing or negligent misrepresentations regarding its exposure limits

Finally, the complaint additionally alleges that on June 8, 2017, State Bank fraudulently or negligently misrepresented that it had sufficient exposure limits with India Overseas. To state a valid fraud claim, the complaint must allege State Bank knew these statements to be false at the time they were made. (*Charnay*, *supra*, 145 Cal.App.4th at p. 184.) As for the negligent misrepresentation claim, the complaint must allege State Bank "lacked any reasonable ground for believing the statement to be true." (*Ibid*.)

The complaint alleges State Bank told Akgus that it did not have exposure limits with India Overseas on July 11, 2017. But the complaint does not allege State Bank knew this to be false on June 8, when it made the alleged misrepresentation. It also does not allege facts suggesting State Bank did not have any reasonable basis to believe the statement was true on June 8.[7]

The complaint does not adequately allege fraud or negligent misrepresentation.

---

[7] We note that even after the trial court sustained State Bank's demurrer to the fraud and negligent misrepresentation causes of action in the second amended complaint in part on the ground that Akgus failed to allege falsity or scienter, Akgus failed to allege facts to support those elements in the third amended complaint. Further, Akgus does not challenge the trial court's ruling denying leave to amend.

## DISPOSITION

The judgment is affirmed.  Respondent to recover its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ADAMS, J.

We concur:

EDMON, P. J.

LAVIN, J.

26